**CALIFORNIA PACIFIC MEDICAL CENTER, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**CALIFORNIA PACIFIC MEDICAL CENTER, Respondent.**

Nos. 93–71039, 94–70009.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 15, 1995.

Decided June 19, 1996.

Jerome B. Falk, Jr., Howard, Rice, Nemerovski, Canady, Robertson, Falk & Rabkin, San Francisco, California, for petitioner-respondent.

Richard A. Cohen, National Labor Relations Board, Washington, DC, for respondent-petitioner.

Before: FLETCHER, POOLE, and O'SCANNLAIN, Circuit Judges.

FLETCHER, Circuit Judge:

California Pacific Medical Center ("CPMC") petitions for review of the final Decision and Order of the National Labor Relations Board ("the Board") which held that CPMC violated sections 8(a)(1) and (5) of the National Labor Relation Act. CPMC had refused to recognize the California Nurses Association ("CNA") as the bargaining representative for a bargaining unit comprised of all registered nurses at Children's Hospital of San Francisco ("Children's"), and unilaterally altered the employment conditions of the Children's nurses after Children's merged with Pacific Presbyterian Center ("Presbyterian") to form CPMC. We affirm the Board's final Decision and Order.

## I. FACTS AND PRIOR PROCEEDINGS

On June 16, 1991, Children's and Presbyterian merged to form CPMC. The two hospitals are approximately one mile apart. After the merger, Children's became CPMC's "California Campus" and Presbyterian became CPMC's "Pacific Campus." To improve efficiency, CPMC took steps to integrate the two hospitals' operations by eliminating duplications in staff, equipment, and services.

Before the merger, six unions represented the employees at Children's and Presbyterian. CPMC decided to recognize only those unions which represented a majority of the employees in the combined units. Under this framework, CPMC recognized five of the unions,[1] but refused to recognize CNA. At the time of the merger, CNA represented 589 nurses at Children's, but no union represented the 838 nurses at Presbyterian. On the day of the merger, CPMC withdrew recognition from CNA, despite the fact that CNA had represented the nurses at Children's since 1947.

The next day, CPMC petitioned the Board for an election to allow the 1,427 nurses to decide whether they wanted representation, and invited CNA to assist with the election. Instead, CNA filed an unfair labor practices charge with the Board which precluded the election. While awaiting the Board's response, CPMC unilaterally gave the former Children's nurses a substantial pay raise and made other changes in their terms of employment.

Eight months after the merger, pursuant to section 10(j) of the National Labor Relations Act, the Board petitioned the U.S. District Court for Northern California for a preliminary injunction to restore the premerger status quo. Noting the unilateral withdrawal of recognition and four decades of representation, the district court granted the requested injunction, pending the Board's final determination. *Miller ex rel. NLRB v. California Pac. Medical Ctr.*, 788 F.Supp. 1112, 1116 (N.D.Cal.1992). Upon CPMC's motion, we stayed, pending appeal, the order to reinstate the pre-merger employment conditions, but left standing the order to recognize CNA.

On appeal, we vacated the preliminary injunction, holding that the District Court had applied the wrong legal standard in evaluating whether to grant a preliminary injunction. *Miller ex rel. NLRB v. California Pac. Medical Ctr.*, 991 F.2d 536, 542 (9th Cir. 1993).

Subsequently, we granted the Board's Petition for Rehearing En Banc. A majority of the en banc court reached the same result as had the panel, finding that the district court had applied the wrong standard in granting the preliminary injunction. It did not remand for application of the proper standard, but rather vacated the district court's opinion because the district court had lost jurisdiction since the NLRB had in the interim issued its final order. *Miller ex rel. NLRB v. California Pac. Medical Ctr.*, 19 F.3d 449, 456 (9th Cir.1994) (en banc). It is the Board's final order that we now review.

During the pendency of the preliminary injunction appeal, an Administrative Law Judge ("the ALJ") heard the unfair labor practice charges. On April 6, 1993, the ALJ issued a Decision and Order ruling that CPMC's unilateral decisions to withdraw recognition from CNA and to alter the terms of the nurse's employment violated sections 8(a)(1) and (5) of the National Labor Relations Act.[2]

The ALJ made several findings indicating that CPMC had taken steps toward integrating its California and Pacific campuses. CPMC immediately centralized its management and administrative functions for the two hospitals and implemented common labor practices. CPMC took some steps to-

---

1. These five unions represented 600 of CPMC's 4100 non-nurse employees.

2. Section 8(a)(1) of the Act (29 U.S.C. § 158(a)(1)) makes it an unfair labor practice for an employer to "interfere with, restrain, or coerce employees in the exercise of . . . the right to bargain collectively through representatives of their own choosing. . . ." Section 8(a)(5) of the Act (29 U.S.C. § 158(a)(5)) makes it an unfair labor practice for an employer "to refuse to bargain collectively with the representatives of his employees. . . ."

ward unifying the two nursing departments: it centralized the upper levels of management; it centralized hiring and training; it distributed identical clinical and administrative manuals; it employed numerous clinical nurse specialists at both campuses; it created a voluntary cross-training program to allow any registered nurse to change campuses; and 100 float pool nurses were available on both campuses.

However, the ALJ also made several findings indicating that the nurses on the two campuses remained functionally separate. In the two months immediately after the merger, there was "almost no interchange" of nurses between the campuses. The nurses continued to use the parking lots, cafeterias, and pharmacies on their own campuses. The merger did not affect the nurses' job titles or responsibilities. The two layers of the chain-of-command immediately above the nurses—unit supervisors and nurse managers—did not have cross-campus responsibilities. In short, the merger had few day-to-day effects on the nurses.

The ALJ began his legal analysis with the single facility presumption, under which a single, geographically isolated facility operated by an employer which also operates other facilities is presumably the proper bargaining unit. The ALJ held that there are two ways to rebut this presumption. First, a party may demonstrate "circumstances that militate against its appropriateness, including an increased risk of work disruption...." *Manor Healthcare Corp.*, 285 NLRB 224, 226, 1987 WL 89813 (1987). Second, a party may demonstrate other countervailing factors, such as geographic proximity, employee interchange, functional integration, administrative centralization, and common supervision. Bargaining history may also be a factor. *West Jersey Health System*, 293 NLRB 749, 751, 1989 WL 223929 (1989).

The ALJ then ruled that CPMC failed to rebut the single facility presumption. The ALJ rejected a *Manor Healthcare* rebuttal because CPMC offered no evidence of a risk of work disruptions. The ALJ also rejected a *West Jersey* rebuttal because CNA had a four-decade bargaining history and because

of the lack of interchange between the nurses of the two campuses.

Accordingly, the ALJ held that CPMC's withdrawal of recognition from CNA and its unilateral changes in the nurses' conditions of employment violated the National Labor Relations Act. As a remedy, the ALJ recommended that the Board order CPMC to allow CNA to choose which unilateral changes to keep and which to reject. On September 30, 1993, the Board issued a final Decision and Order affirming the ALJ's findings and conclusions and adopting his recommended Order. *See Children's Hospital*, 312 NLRB No. 138, 1993 WL 398480 (1993). CPMC appealed.

## II. JURISDICTION

The Board had jurisdiction over the unfair labor practices alleged by CNA against CPMC under section 10(a) of the National Labor Relations Act, 29 U.S.C. 160(a). We have jurisdiction over the Board's final Decision and Order under section 10(f) of the Act, 29 U.S.C. 160(f).

## III. STANDARD OF REVIEW

■ Courts of appeals may overturn Board decisions only if the Board's findings of fact are not supported by substantial evidence, or if the Board has incorrectly applied the law. *NLRB v. General Truck Drivers, Local No. 315*, 20 F.3d 1017, 1021 (9th Cir. 1994), *cert. denied*, — U.S. ——, 115 S.Ct. 355, 130 L.Ed.2d 310 (1994). The substantial evidence test requires a case-by-case analysis and a review of the whole record. *Id.*

■ In addition, there is a substantial overlay of deference to the Board. Courts of appeals may overturn the Board's interpretations of the National Labor Relations Act only if they are not "reasonably defensible." *Id.* (quoting *NLRB v. United Union of Roofers, Waterproofers & Allied Workers, Local 81*, 915 F.2d 508, 510 (9th Cir.1990)). This is because "[t]he responsibility to adapt the Act to changing patterns of industrial life is entrusted to the Board." *NLRB v. Weingarten, Inc.*, 420 U.S. 251, 266, 95 S.Ct. 959, 968, 43 L.Ed.2d 171 (1975).

■ The determination of appropriate bargaining units is uniquely the Board's function—we overturn only an "abuse of discretion." *NLRB v. HMO Int'l/Cal. Medical Health Plan, Inc.*, 678 F.2d 806, 809 (9th Cir.1982) (Kennedy, J.). *See NLRB v. Action Automotive, Inc.*, 469 U.S. 490, 497, 105 S.Ct. 984, 989, 83 L.Ed.2d 986 (1984) ("We ... are not prepared to second-guess the Board's" unit decisions); *South Prairie Constr. Co. v. Operating Eng'rs Local 627*, 425 U.S. 800, 805, 96 S.Ct. 1842, 1845, 48 L.Ed.2d 382 (1976) (a Board's unit decision "if not final, is rarely to be disturbed...."). The Board need only select an appropriate unit, not the most appropriate unit. *American Hosp. Ass'n v. NLRB*, 499 U.S. 606, 610, 111 S.Ct. 1539, 1542, 113 L.Ed.2d 675 (1991).

■ Courts of appeals may overturn the Board's remedial orders only for a "clear abuse of discretion." *NLRB v. C.E. Wylie Constr. Co.*, 934 F.2d 234, 236 (9th Cir.1991). Such abuse occurs only if "the order is a patent attempt to achieve ends other than those that can be fairly said to effectuate the policies of the Act." *Id.* (quoting *Teamsters Cannery Local 670 v. NLRB*, 856 F.2d 1250, 1260 (9th Cir.1988)).

### IV. DISCUSSION

This appeal presents two questions. First, was CNA an appropriate bargaining unit? This turns on whether the single facility presumption is applicable and properly applied. Second, was the Board's remedy proper?

### A. THE SINGLE FACILITY PRESUMPTION

■ CPMC argues that the Board should have applied the disparity of interest test and not the single facility presumption. We disagree.

■ The linchpin of this case is whether, after the merger, CNA remained an appropriate bargaining unit. After a merger, an employer has no duty to negotiate with a pre-merger bargaining unit that has become inappropriate. *See, e.g., Border Steel Rolling Mills, Inc.*, 204 NLRB 814, 822, 1973 WL 4820 (1973); *Myers Custom Prods., Inc.*, 278 NLRB 636, 637, 1986 WL 68774 (1986).

However, if a pre-merger bargaining unit remains appropriate, the new employer must recognize it. *See, e.g., NLRB v. Burns Int'l Sec. Servs., Inc.*, 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972).

The Board held that the single facility presumption applies to the California campus, making the nurses of that campus an appropriate bargaining unit. *See, e.g., Spring City Knitting Co. v. NLRB*, 647 F.2d 1011, 1014 (9th Cir.1981) (discussing the single facility presumption). Petitioner favors the disparity of interests test, under which the nurses of both campuses would be presumed to be the appropriate bargaining unit, unless there were a disparity of interests between the two campuses. *See, e.g., NLRB v. St. Francis Hosp.*, 601 F.2d 404, 419 (9th Cir.1979) (discussing the disparity of interests test).

Before 1974, the NLRA did not cover employees in the nonprofit health care industry. 29 U.S.C. § 152(2) (1973) (repealed, 1974). In 1974, Congress amended the Act to cover them. S. 3203, 93d Cong., 2d Sess. (1974); H.R. 13678, 93d Cong., 2d Sess. (1974); *see generally* S.Rep. No. 93–766, 93d Cong., 2d Sess. 1 (1974), *reprinted in* 1974 U.S.C.C.A.N. 3946. Apparently, because some legislators feared this amendment could cause disruptions in patient care, the following language was inserted in the Senate Report: "due consideration should be given by the Board to preventing the proliferation of bargaining units in the healthcare industry." S.Rep. No. 93–766, 93d Cong., 2d Sess. 5 (1974), *reprinted in* 1974 U.S.C.C.A.N. 3946, 3950.

On its face, it is not clear whether this language was meant to discourage proliferation in unit composition (*i.e.* different units for different occupations), or unit scope (*i.e.* different units for different facilities), or both. At least two circuits have applied this language to unit scope decisions in the health field. In *Presbyterian/St. Luke's Medical Ctr. v. NLRB*, 653 F.2d 450 (10th Cir.1981), *cert. dismissed*, 459 U.S. 1025, 103 S.Ct. 433, 74 L.Ed.2d 522 (1982), the Tenth Circuit reversed the Board's use of the single facility presumption to certify a union to represent the employees at one hospital in a three-

hospital system. The court held that this presumption "failed to recognize Congress' directive in unit scope determinations."[3] *Id.* at 455. The court ordered the Board instead to focus on "the public interest in preventing fragmentation in the health care field." *Id.*

The Second Circuit reached the same conclusion in *Long Island Jewish–Hillside Medical Ctr. v. NLRB*, 685 F.2d 29 (2d Cir.1982). There, the Board used the single facility presumption to certify a union for the nurses at one facility in a three-facility system. *Id.* at 31. The court reversed, reasoning that "if the Board focuses on questions of composition to the exclusion of those regarding scope, it will defeat the very purpose of the congressional admonition against proliferation." *Id.* at 34.

We have discouraged proliferation in unit *composition* decisions. In *St. Francis Hospital,* we rejected the Board's irrebuttable presumption that registered nurses had unique interests that set them apart from other professional employees and were thus entitled to their own unit. 601 F.2d at 414. Instead, we applied the disparity of interests test. *Id.* at 416. In *HMO International,* this court rejected on the same grounds the Board's division of licensed vocational nurses and registered nurses into separate bargaining units. 678 F.2d 806. Significantly, the D.C. Circuit reached the opposite conclusion, holding that the 1974 legislative history did not require the disparity of interests test in unit composition decisions. *International Bhd. of Elec. Workers, Local No. 474 v. NLRB*, 814 F.2d 697, 700 (D.C.Cir.1987) ("courts have no authority to *enforce* alleged principles gleaned *solely* from legislative history that has no statutory reference point.").

However, unlike the Second and Tenth Circuits, we have never held that the Board must apply the disparity of interests test and not the single facility presumption to unit *scope* decisions. The issue is new to us.

Whatever Congress may have intended,[4] a recent opinion of the United States Supreme Court, *American Hospital v. NLRB,* 499 U.S. 606, 111 S.Ct. 1539, 113 L.Ed.2d 675 (1991), undermines any reliance on the 1974 Senate Report. When the Board promulgated a rule limiting the number of bargaining units at any hospital, the American Hospital Association challenged it on the grounds, *inter alia,* that it "violates a congressional admonition to the Board to avoid the undue proliferation of bargaining units in the health care industry...." *Id.* at 609, 111 S.Ct. at 1541. The Supreme Court upheld the Board's rule. In doing so, the Court held that legislative history lacks "the force of law." *Id.* at 616, 111 S.Ct. at 1545. It went on to state that this particular piece of legislative history was "best understood as a form of notice to the Board that if it did not give appropriate consideration to the problem of proliferation in this industry, Congress might respond with a legislative remedy." *Id.* at 617, 111 S.Ct. at 1545.

Shortly after this decision, one legal scholar wrote, "[t]he Court's declaration effectively razed the actions of several courts of appeals." Terry A. Bethel, *Recent Supreme Court Employment Law Decisions, 1990–91,* 17 Dayton L.Rev. 33, 42 (1991). Time has proved this assessment to be correct. As discussed above, the Second Circuit previously had held that the Board should not apply the single facility presumption to the health care industry. *See Long Island Jewish-Hillside,* 685 F.2d 29. However, in light of *American Hospital,* the Second Circuit reversed itself in *Local 144 v. NLRB,* 9 F.3d

---

**3.** In *Presbyterian,* the Tenth Circuit also rejected the Board's unit composition decision, which granted the registered nurses an independent union. It held that application of the Board's presumption in favor of separate units violated the Federal Rules of Evidence. 653 F.2d at 456.

**4.** There is reason to doubt in any event that the comments were aimed at determinations as to scope. Immediately after the language discouraging proliferation of bargaining units, the Senate Report goes on to cite approvingly three Board unit decisions in the health industry.

S.Rep. No. 93–766, 93d Cong., 2d Sess. 5 (1974), *reprinted in* 1974 U.S.C.C.A.N. 3946, 3950. All three involved unit composition. *See Four Seasons Nursing Center,* 208 NLRB 403, 1974 WL 4614 (1974) (maintenance workers aggregated into housekeepers unit); *Woodland Park Hosp.,* 205 NLRB 888, 1973 WL 5200 (1973) (X-ray technicians aggregated into general unit); *Extendicare of W. Va.,* 203 NLRB 1232, 1973 WL 12489 (1973) (licensed practical nurses granted separate unit).

218 (2nd Cir.1993), stating that "we cannot say that the Board was bound to follow this Circuit's preference for consolidating bargaining units in multi-site hospital situations." *Id.* at 225. The Second Circuit reaffirmed its change of heart in *Staten Island Univ. Hosp. v. NLRB*, 24 F.3d 450, 456–57 (2nd Cir.1994).

Similarly, the Third Circuit reversed itself. Prior to *American Hospital*, the Third Circuit interpreted the 1974 legislative history as requiring the Board to abandon the single facility presumption. *See St. Vincent's Hosp. v. NLRB*, 567 F.2d 588 (3rd Cir.1977); *Allegheny Gen. Hosp. v. NLRB*, 608 F.2d 965 (3rd Cir.1979). However, in *St. Margaret Memorial Hosp. v. NLRB*, 991 F.2d 1146 (3rd Cir.1993), the Third Circuit held that *American Hospital* overturned its reading of the legislative history: "*Allegheny General* and *St. Vincent's* are no longer good law." *Id.* at 1155.

Petitioner's proposal that we create new law in this circuit by prohibiting the Board from using the single facility presumption in unit scope determinations ignores the teaching of *American Hospital* and would put us at odds with other circuits that have considered the impact of *American Hospital.* We decline to do so.

## B. THE BOARD'S APPLICATION OF THE PRESUMPTION

■ The petitioner's fallback position is that even if the single facility presumption applies, the Board misapplied it here since CPMC successfully rebutted the presumption that the California campus nurses comprise an appropriate bargaining unit. As discussed above, we must affirm the Board's bargaining unit determination unless there is an "abuse of discretion." *HMO Int'l,* 678 F.2d at 809. The Board need only select an appropriate unit, and not necessarily the best unit. *American Hosp.,* 499 U.S. at 610, 111 S.Ct. at 1542; *Spring City,* 647 F.2d at 1014 (same). Because the Board did not abuse its discretion when it found that the California nurses comprise an appropriate unit, we affirm.

In *Spring City,* 647 F.2d at 1014, the Ninth Circuit held "[t]here is a presumption that a single plant is an appropriate bargaining unit." The court went on to list seven factors that the Board ordinarily considers: "functional integration of the business, centralized control of management, similarity of working conditions, collective bargaining history, local power to hire and fire, lack of employee interchange, [and] geographical distance." *Id.* (quoting *NLRB v. Sunset House,* 415 F.2d 545, 548 (9th Cir.1969)). Consideration of these factors in relation to the Board's findings leads us to conclude that we cannot hold that the Board abused its discretion.

For nearly half a century CNA has represented the nurses at the California campus. The Pacific campus has an entirely different history—it has never had a nurses' union. *See, e.g., Bay Medical Ctr., Inc. v. NLRB,* 588 F.2d 1174, 1178 (6th Cir.1978) (upholding a Board decision that the policy against disrupting existing bargaining relationships outweighed the policy against proliferating unions in the health care industry), *cert. denied,* 444 U.S. 827, 100 S.Ct. 53, 62 L.Ed.2d 35 (1979).

Moreover, the Board found a "lack of significant interchange between nurses on the two campuses." *Children's Hospital,* 312 NLRB No. 138, 1993 WL 398480 (1993). The nurses, separated by a mile of city streets, continued to use separate cafeterias, parking lots, pharmacies, and other medical facilities. Cross-campus work was voluntary, and few nurses had volunteered for it at the time of the hearing. *See, e.g., Spring City,* 647 F.2d at 1015 ("a relatively low degree of actual employee interchange among different plants [is] a strong indication that there is no collective 'community of interests' among a proposed multi-plant bargaining unit").

CPMC urges that it has centralized management and administration of the two campuses, that the nurse directors of the separate campuses have little autonomy, that the power to hire and fire rests with centralized management, and that working conditions are nearly identical. All this may be true.

If the Board had less discretion in the unique and discrete function of determining the appropriate bargaining unit, our decision

might be different. But our role is not to reweigh the factors or second-guess the Board's expertise. We affirm the Board's determination of the bargaining unit.

## C. THE REMEDY

 To remedy CPMC's unilateral changes in the nurses' employment conditions, the Board issued a "status quo ante restoration order" that allowed CNA to choose which changes to reject and which to keep. Some changes were clearly beneficial, others not.

Under section 10(c) of the National Labor Relations Act (29 U.S.C. § 160(c)), the Board has broad discretion to impose remedies for unfair labor practices. We may overturn the Board's remedial order only if there is "clear abuse of discretion." *Wylie Constr.*, 934 F.2d at 236. We find no clear abuse of discretion and therefore uphold the Board's remedy.

The Board's remedy is well grounded in law. The Seventh Circuit has approved the Board's policy "in cases of combined favorable and unfavorable unilateral changes," which is "to order a return to the status quo ante with regard to the unfavorable changes, but to not penalize employees by ordering revocation of the favorable changes." *NLRB v. Keystone Steel & Wire*, 653 F.2d 304, 308 (7th Cir.1981). *Accord Kendall College*, 228 NLRB 1083, 1089, 1977 WL 8495 (1977), *enforced*, 570 F.2d 216 (7th Cir.1978); *Rockwood Energy and Mineral Corp.*, 299 NLRB 1136, 1140, 1990 WL 482294 (1990), *enforced* 942 F.2d 169 (3d Cir.1991). If an employer wrongly implements unilateral changes in employment conditions, "the Board will usually order that the status quo ante be restored.... [I]f the change involves the granting of a benefit, the Board's order will require rescission of the beneficial change only if the union involved seeks such rescission." *The Developing Labor Law* 1846 (Patrick Hardin et al. eds., 1992).

CPMC argues that the Board's remedy is appropriate only if the employer commits "a particularly egregious" violation of the Act. For an example of such a violation, it points to *Peat Mfg. Co.*, 251 NLRB 1117, 1136–37, 1980 WL 12315 (1980), *enforced without op.*, 673 F.2d 1339 (9th Cir.1982), a case in which the employer told the employees they would be fired if they went on strike. By contrast, it argues, CPMC's conduct was not egregious: CNA did not represent a majority of the nurses; and CPMC recognized five of six unions, raised salaries, and asked CNA to assist in new elections. However, the law does not support the standard suggested by CPMC. *See Kendall College*, 228 NLRB at 1083–84 (similar remedy upheld; employer refused to bargain with union and unilaterally altered terms of employment); *Keystone Steel*, 653 F.2d at 305 (similar remedy upheld; employer unilaterally changed employee health plan); *Rockwood Energy*, 942 F.2d at 172 (similar remedy upheld; employer refused to bargain with union and unilaterally altered terms of employment).

The Board did not clearly abuse its discretion. We affirm.

## V. CONCLUSION

We enforce the Board's order.