107 F.3d 16
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
MARE-BEAR, INC., dba Stardust Hotel & Casino, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
MARE-BEAR, INC., dba Stardust Hotel & Casino, Respondent.
 Nos. 95-70554, 95-70668.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 11, 1996.*
Decided Dec. 12, 1996.
 
 Before: BROWNING, ALDISERT,** and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM***
 
 
 2
 Mare-Bear, Inc., dba Stardust Hotel & Casino ("Mare-Bear"), petitions for review of the National Labor Relations Board's ("the Board's") decision finding that Mare-Bear committed an unfair labor practice in violation of National Labor Relations Act section 8(a)(5), 29 U.S.C. § 158(a)(5) ("the Act"), by withdrawing recognition from United Brotherhood of Carpenters and Joiners of America, Local 1780, AFL-CIO, as the representative of Mare-Bear employees after the union president appointed an emergency supervisor over the Local. The Board cross-petitions for enforcement of its decision. We have jurisdiction pursuant to 29 U.S.C. § 160(e) and (f) and we grant enforcement of the Board's order.
 
 The Facts and Proceedings Below
 
 3
 The United Brotherhood of Carpenters & Joiners of America, Local 1780, AFL-CIO ("the Union"), has been a chartered subordinate body of the International Brotherhood of Carpenters & Joiners of America ("the International") since 1929. Mare-Bear's predecessor and the Union entered into a collective bargaining agreement effective from June 1, 1983 through July 1, 1987. In 1985, Mare-Bear purchased the assets of its predecessor and assumed the collective bargaining agreement with the Union. As the agreement approached its July 1, 1987 expiration date, Mare-Bear and the Union began bargaining for a new agreement. Although bargaining continued without the parties reaching agreement, Mare-Bear continued to observe the terms of the expired agreement.
 
 
 4
 Pursuant to its constitution, the International has the "right to establish supervision over and to conduct the affairs of any subordinate body" in specified circumstances. This power includes the right to remove any or all officers of "such subordinate body." The constitution also sets out procedures for establishing supervision. On January 28, 1993, the International placed the Union under emergency supervision. The emergency supervision lasted until May 1, 1993, at which time the International placed the Union under non-emergency supervision. That supervision remained in place through the hearing in this matter.
 
 
 5
 Pursuant to the establishment of supervision, the International suspended the Union's bylaws and removed certain union officers and business agents. In addition, it named a supervisor and appointed representatives from the International to assist the supervisor in overseeing the affairs of the Union. The International also appointed four business representatives. All four business representatives had been previously involved with the Union in one form or another. These appointees were paid by the Union and ran its day-to-day operations. The Union continued to represent employees, service contracts, negotiate new contracts, and organize employees. In addition, the Union maintained its offices, retained its property and assets, and continued the operation of its hiring hall.
 
 
 6
 Throughout this process, Mare-Bear continued to observe the terms of the expired collective bargaining agreement: it remitted membership fees and dues to the Union; made contributions to the union health and welfare trust fund and pension trust; and contacted the Union's dispatching office to request workers. On June 15, 1993, in the midst of ongoing contract negotiations, Mare-Bear sent a letter to the Union withdrawing recognition from the Union as the representative of Mare-Bear's employees on the ground that the placing of the Union under supervision "effectively destroyed the existence of [the Union]." Since that time, Mare-Bear has refused to bargain with the Union.
 
 
 7
 Based upon these facts, the Union filed a complaint against Mare-Bear alleging unfair labor practices in violation of section 8(a)(5) and (1) of the National Labor Relations Act which make it an unfair labor practice for an employer "to refuse to bargain collectively with the representative of [its] employees" and to "interfere with, restrain, or coerce employees in the exercise of rights." 29 U.S.C. 158(a)(5) & (1). Following a hearing, an administrative law judge issued a decision finding that Mare-Bear's withdrawal of recognition from the Union as the exclusive collective bargaining agent of Mare-Bear's employees and refusal to meet and bargain with the Union violated section 8(a)(5) of the Act and the Board affirmed. The Board found that the Union continued to represent its members after supervision was imposed as it had done prior to supervision by negotiating and servicing contracts, handling employee grievances, and operating its hiring hall. Further, the Board found that the changes to the Union that did occur, such as the replacement of certain union officers and the suspension of its bylaws, did not demonstrate an alteration of the Union's identity. Rather, such changes were "part and parcel of any imposition of a ... supervisorship." The Board found that Mare-Bear failed to show that the supervisorship so altered the Union as to destroy its continuity of representation and concluded that Mare-Bear unlawfully withdrew recognition from and refused to bargain with the Union.
 
 Analysis
 
 8
 Mare-Bear argues that the International's supervision of the Union altered the Union's identity, thereby destroying its continuity of representation and relieving Mare-Bear of its duty to bargain. The determination of whether a union's identity has remained essentially the same or whether it has changed so substantially as to suspend the employer's duty to bargain depends on a factual determination by the Board after it examines the various changes that affiliation may effect. So long as the Board's conclusion is supported by substantial evidence we must affirm. California Pacific Medical Center v. NLRB, 87 F.3d 304, 307 (9th Cir.1996).
 
 
 9
 Although the Act recognizes that employee's support for a certified bargaining representative may be eroded by changed circumstances, changes in a union's organization or structure do not necessarily warrant disruption of a union's status as bargaining representative. NLRB v. Food & Commercial Workers, Local 182, 475 U.S. 194, 198 (1986). As the Supreme Court has recognized, " '[t]he industrial stability sought by the Act would unnecessarily be disrupted if every union organizational adjustment were to result in displacement of the employer-bargaining representative relationship.' " NLRB v. Financial Institutional Employees of America, Local 1182, 475 U.S. 192, 202-203 (1986), quoting Canton Sign Co., 174 NLRB 906, 906 (1969), enforcement denied on other grounds, 457 F.2d 832 (6th Cir.1972). An employer can discontinue recognition only when the changed circumstances are substantial enough to raise a question of representation. NLRB v. Food & Commercial Workers, Local 182, 475 U.S. at 200.
 
 
 10
 All changes made to the Union were made pursuant to the imposition of a trusteeship by the International. The Board found that the changes that occurred during the imposition of the supervisorship were not of the type the Board and courts have considered relevant to issues of employee support for the union that represents them. In identifying the types of changes in union governance which will affect the continuity of representation of a union, the Board contrasted changes to a union's constitutional or fundamental underpinnings which affect continuity of representation with changes in the governance of the Union consistent with those underpinnings which do not affect continuity of representation. The former category involves changes in the nature of the organization such as a change in its constitutional relationship to affiliated superior bodies such as an international union or changes, schisms or mergers which represent a change in the organization itself. In contrast, the latter category involves changes which do no effect the structure or nature of the union but act within it such as changes in the identity of officials of the entity or changes in the way the offices are administered.
 
 
 11
 In the present case, no changes in the constitutional relationship between the International and the Union were undertaken and the Union was not divided, merged, or reaffiliated. The Board concluded that the changes at issue in the present case were not of a fundamental nature or of the type that the Board and courts have considered relevant to issue of continuity of representation or employee support for the union that represents them. Comparing the pre and post-supervision Union, the Board found that Mare-Bear failed to prove that the establishment of supervision altered the identity of the Union as the employees' bargaining representative.
 
 Conclusion
 
 12
 Substantial evidence supports the Board's conclusion and we grant enforcement of the Board's order.
 
 
 13
 ENFORCEMENT OF BOARD'S ORDER GRANTED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. See Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 Hon. Ruggero J. Aldisert, Senior U.S. Circuit Judge for the Third Circuit, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3