141 F.3d 1177
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
National Labor Relations Board, Petitioner,
v.
FLAMINGO-HILTON RENO, INC., Respondent.
 No. 96-70859.
N.L.R.B. No: 0973-2: 32-CA-14378.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 6, 1998**.
Decided Feb. 27, 1998.
 
 On Application for Enforcement of an Order of the National Labor Relations Board.
 Before PREGERSON, BEEZER, and HALL, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The National Labor Relations Board ("Board") petitions for enforcement of its order finding the Flamingo Hilton-Reno, Inc. ("Hilton") in violation of Sections 8(a)(1) and (5) of the National Labor Relations Act ("Act"), 29 USC § 158(a)(1) and (5). The Board found that Hilton violated the Act by refusing to bargain with the United Brotherhood of Carpenters Western Council of Industrial Workers, United Brotherhood of Carpenters and Joiners of America, AFL-CIO ("Union"); by making unilateral changes in employment without notifying or bargaining with the Union; and by engaging in conduct that interfered with Hilton employees' rights to organize and to campaign in favor of Union representation.
 
 
 3
 We grant the petition for enforcement.
 
 BACKGROUND
 
 4
 The Flamingo Hilton is a resort hotel and casino operating in Reno that employs approximately 1200 workers. On August 18, 1994, Hilton's full-time and regular part-time employees voted in favor of representation by the United Brotherhood of Carpenters Western Council of Industrial Workers, United Brotherhood of Carpenters and Joiners of America, AFL-CIO ("Union"). On February 22, 1995, the Board certified the Union as the exclusive bargaining representative of Hilton employees.
 
 
 5
 On August 29, 1994, the Union requested that Hilton recognize and bargain with the Union as the exclusive collective bargaining representative of the unit employees. Hilton refused to do so. In the months after the election, Hilton laid off employees, granted discretionary pay raises and refused to discuss or process Union grievances. In November 1994, Hilton closed its hotel laundry, laid off certain unit laundry employees and transferred the unit work to the Reno Hilton. In January 1995, Hilton closed the hotel bakery, laid off certain bakery employees, and transferred the unit work to the Reno Hilton.[1] Hilton unilaterally made these changes without providing the Union with an opportunity to bargain. Hilton additionally refused to furnish the Union with requested information related to the above actions.
 
 
 6
 Prior to the election, Hilton also interfered with its employees' rights to participate in union activities. In June 1994, a Hilton security guard searched employee Herlinda Carajal's locker, looking for union materials. The security guard told Ms. Carajal's supervisor that she was "causing problems with the Union," and her supervisor told her not to distribute union materials on Hilton premises, suggesting that she "conduct her union activity where nobody would see her."
 
 
 7
 About a month before the election, employee Byron Gonzales ceased wearing his "Union Yes" button because he was fearful about the manner in which his supervisor questioned him about why he was wearing the button. Hilton supervisor Ed Hsiao told employee Silvia Cruz that she could "get into a lot of trouble" for wearing a "Union Yes" button. Two weeks after the election, Hsiao told a group of employees that it would take about two years before the Union could do anything for them. He also stated that Hilton could lay them off quickly and the Union could not do anything about it.
 
 
 8
 The Union filed an unfair labor practice charge against Hilton in November 1994, alleging violations of Sections 8(a)(1) and (5) of the Act, 29 U.S.C. § 158(a)(1) and (5).[2] After a hearing, an administrative law judge ("ALJ") concluded that Hilton's conduct violated Sections 8(a)(1) and (5) of the Act. The ALJ ordered Hilton to cease and desist from its unlawful conduct and required that Hilton bargain in good faith with the Union, discuss grievances, provide all requested information, and "make whole" any employees who sustained monetary damage as a result of Hilton's refusal to bargain with the Union.
 
 
 9
 The Board adopted the ALJ's rulings, findings, and conclusions of law and adopted the ALJ's order with modifications.[3] The Board also added an amended remedy which provides that Hilton must:
 
 
 10
 restore the status quo ante by reopening its laundry and bakery, restoring the work it transferred to the Reno Hilton, offering the unit employees affected by these actions immediate reinstatement to their former positions, and making those employees whole for any loss of earnings and other benefits suffered, in the manner set forth in the remedy section of the judge's decision. The Respondent may, however, introduce previously unavailable evidence, if any, at the compliance stage of this proceeding, to demonstrate that the restitution of those operations would be unduly burdensome.
 
 
 11
 The Board applies for enforcement of its amended order.
 
 
 12
 Hilton opposes enforcement of the order on the narrow ground that the Board allegedly erred in finding that Hilton violated Section 8(a)(1) and (5) of the Act by closing its laundry and bakery facilities without first notifying and bargaining with the Union and by failing to provide the Union with information related to such closures. Hilton argues additionally that the Board's remedy that requires Hilton to reopen its laundry and bakery facilities is inappropriate. We have jurisdiction under 29 U.S.C. § 160(e).
 
 I.
 
 13
 We uphold decisions of the National Labor Relations Board if its findings of fact are supported by substantial evidence and if it correctly applied the law. California Pac. Med. v. NLRB, 87 F.3d 304, 307 (9th Cir.1996). "Courts of appeals may overturn the Board's remedial orders only for a clear abuse of discretion." Id . at 308 (citation and internal quotation omitted). The Board has abused its discretion only if "the order is a patent attempt to achieve ends other than those that can be fairly said to effectuate the policies of the Act." Id.
 
 II.
 
 14
 Hilton only challenges the Board's findings and order related to Hilton's closure of the hotel laundry and bakery operations. The Board is therefore entitled to summary enforcement of the uncontested portions of its order. See Sparks Nugget, Inc. v. NLRB, 968 F.2d 991, 998 (9th Cir.1992); NLRB v. Sheet Metal Workers' Int'l. Ass'n, 873 F.2d 236, 237 (9th Cir.1989).
 
 III.
 
 15
 Hilton argues on appeal that its decision to close the laundry and bakery facilities was not a "mandatory subject of bargaining" and therefore that it could not have violated Section 8(a)(1) and (5) by refusing to bargain or provide information to the Union regarding these closures.[4] Hilton further argues that no substantial evidence supports the Board's conclusion that these closures were a mandatory subject of bargaining. Finally, Hilton argues that because it did not violate the Act by refusing to bargain regarding the closures, the Board's remedy requiring it to reopen the bakery and laundry facilities is inappropriate. Because Hilton failed to raise these arguments before the Board, we lack jurisdiction to consider the merits of Hilton's claims.
 
 
 16
 Section 10(e) of the Act, 29 U.S.C. § 160(e), provides that "[n]o objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." This provision ensures "that the Board is given the opportunity to bring its experience to bear on the issue presented so that we may have the benefit of the Board's analysis when reviewing the administrative determination." NLRB v. International Bhd. of Elec. Workers, Local 952, 758 F.2d 436, 439 (9th Cir.1985) (order enforced notwithstanding union objection because court could not review objection that was not argued before Board).
 
 
 17
 Hilton raised none of these current arguments before the Board. During the hearing and in its brief to the ALJ, Hilton relied solely on its argument that it had no duty to bargain because of the Union's alleged noncompliance with certain Nevada state statutes regulating unions that represent casino gaming employees.[5] In his decision, the ALJ noted that Hilton did not present "any evidence indicating that its refusal to deal with the Union ... and its further refusal to furnish the Union with the requested information, are not matters encompassed by its obligation to consult and deal with the Union regarding the unilateral challenges it admittedly made prior to the certification." In its exceptions to the ALJ decision and its supporting brief submitted to the Board, Hilton again relied exclusively on its defense that it had no duty to bargain because the Union did not comply with Nevada gaming statutes.
 
 
 18
 Finally, Hilton failed to file a motion for reconsideration after the Board issued its decision adopting the ALJ's conclusion that the closures of the laundry and bakery facilities violated the Act. The United States Supreme Court has held that the failure to raise an issue before the Board precludes judicial review by the courts of appeal, even if the only means of raising the matter was by filing a motion for reconsideration. See Woelke & Romero Framing, Inc. v. NLRB, 456 U.S. 645, 665-66, 102 S.Ct. 2071, 72 L.Ed.2d 398 (1982); Garment Workers v. Quality Mfg. Co., 420 U.S. 276, 281 n. 3, 95 S.Ct. 972, 43 L.Ed.2d 189 (1975) (failure to move for reconsideration precluded court jurisdiction to consider claim that Board decided case on theory not charged or litigated).
 
 
 19
 Because Hilton has not alleged any extraordinary circumstances to explain this failure, we cannot consider its challenges to the Board's order. See NLRB v. Apico Inns, Inc., 512 F.2d 1171, 1174 (9th Cir.1975) ("No extraordinary circumstances having been alleged, this court cannot consider respondent's assertion that there was not substantial evidence in support of the Board's finding ....").
 
 
 20
 Section 10(e) also precludes this court's consideration of Hilton's challenges to the Board's remedy--even in situations such as this one where the Board sua sponte adopts an unargued remedy and the only means of challenging such remedy would be to file a motion for reconsideration. See NLRB v. Sambo's Restaurant, Inc., 641 F.2d 794, 796 (9th Cir.1981) ("[s]ince the company failed to file a motion for reconsideration to contest the appropriateness of the additional remedies, it is barred from raising such arguments for the first time in this court.").
 
 
 21
 When Section 10(e) bars consideration of a party's objections to the Board's order, the Board is entitled to enforcement of its order without the court's judgment of the basis for the remedy. See NLRB v. Cheney Cal. Lumber Co., 327 U.S. 385, 389, 66 S.Ct. 553, 90 L.Ed. 739 (1946) ("Justification of ... an order ... is not open for review by a court if no prior objection has been urged before the case gets into court ...."). Moreover, the Board is entitled to enforcement of its order because it acted well within its traditional powers when it issued the status quo ante remedy that requires Hilton to reopen the bakery and laundry facilities.[6] See id. at 388 (court need not enforce order when the Board has "patently traveled outside the orbit of its authority"); California Pac. Med., 87 F.3d at 311 ("If an employer wrongly implements unilateral changes in employment conditions, 'the Board will usually order that the status quo ante be restored ...." ').
 
 III.
 
 22
 The Board is entitled to summary enforcement of the uncontested portions of its order. Moreover, we lack jurisdiction to consider Hilton's challenges to the Board's findings and order on appeal because Hilton failed to raise these issues before the Board.
 
 
 23
 ENFORCEMENT GRANTED.
 
 
 
 **
 The panel finds this case appropriate for submission without oral argument pursuant to Fed. R.App. 34(a); Ninth Cir. R. 34-4
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 Between four and six employees were laid off as a result of these two closures, and three or four employees were transferred to another department where they were given different job titles, work hours, and work days
 
 
 [2]
 Section 158(a) provides that: "It shall be an unfair labor practice for an employer ... (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title ... [and] (5) to refuse to bargain collectively with the representatives of his employees ...."
 
 
 [3]
 The Board modified the ALJ's conclusions of law and order by setting out in more detail the specific bases for the ALJ's finding that Hilton violated Sections 8(a)(1) and (5) of the Act
 
 
 [4]
 "The duty [to bargain] is limited to those [mandatory] subjects ... [;][a]s to other matters, however, each party is free to bargain or not to bargain ...." NLRB v. Borg-Warner Corp., 356 U.S. 342, 78 S.Ct. 718, 722, 2 L.Ed.2d 823 (1958)
 
 
 [5]
 Hilton alleged that the Union was barred from representing Hilton employees because the Union allegedly failed to comply with Nevada Revised Statute 463A, which requires unions and union officials to file certain information with the State Gaming Control Board. Hilton does not raise the Nevada gaming statute as a defense on appeal. The Board rejected this defense in an order enforced by this court in a related action. See Flamingo Hilton Reno v. NLRB, 95 F.3d 1157 (9th Cir.1996) (mem.op.)
 
 
 [6]
 Hilton also argues that the remedy is inappropriate because there is a lack of evidence on whether it would be economically feasible to reopen the facilities. This argument ignores the portion of the Board order that permits Hilton to present evidence at the compliance stage "to demonstrate that the restitution of those operations would be unduly burdensome."