**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STEELWORKERS OF AMERICA
AFL-CIO-CLC,

                *Petitioner,*

      v.

NATIONAL LABOR RELATIONS
BOARD,

              *Respondent,*

TOWER INDUSTRIES, INC.,

              *Intervenor.*

No. 04-76132

N.L.R.B. No.
31-CA-26120

OPINION

On Petition for Review of an Order of the
National Labor Relations Board

Argued and Submitted
March 6, 2007—Pasadena, California

Filed April 2, 2007

Before: Ferdinand F. Fernandez, Susan P. Graber, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Graber

## COUNSEL

Robert J. Stock and Raja Raghunath, Gilbert & Sackman, A Law Corporation, Los Angeles, California, for the petitioner.

Stacy G. Zimmerman and Jill A. Griffin, National Labor Relations Board, Washington, D.C., for the respondent.

Patrick W. Jordan, Jordan Law Group, San Rafael, California, for the intervenor.

## OPINION

GRABER, Circuit Judge:

Petitioner United Steelworkers of America ("the Union") alleged unfair labor practices by Intervenor Tower Industries, Inc. An administrative law judge ("ALJ") found that Tower had violated 29 U.S.C. § 158 and recommended several specific affirmative remedies, including an order requiring Tower to recognize and bargain with the Union, commonly known as a *Gissel* order.[1] A three-judge panel of Respondent National Labor Relations Board ("NLRB" or "the Board") adopted the ALJ's findings, conclusions, and remedies with the exception of the suggested *Gissel* bargaining remedy. The Union seeks review of the Board's refusal to impose a *Gissel* order.[2] On review for a clear abuse of discretion, *Cal. Pac. Med. Ctr. v. NLRB*, 87 F.3d 304, 308 (9th Cir. 1996), we deny the petition.

The relevant facts are not disputed. Tower manufactures individual and custom machine parts. Between January 7 and January 24, 2003, Tower had 91 employees who were eligible for union representation; 57 of them signed union authorization cards, authorizing the Union to represent them in collective bargaining. During that period, on the day of a union-organizing meeting, Tower disciplined and fired two employees, Timothy Hays and Walter Reddoch, because of their support of the union-organizing drive. In the ensuing two months, Tower disciplined a third employee, Marcelo Pinheiro, because of his union support, threatened a fourth employee, Pablo Rodriguez, with reprisal if he supported the Union, and removed union literature from posting areas while permitting non-union notices to remain posted. On March 6, 2003, a rep-

---

[1]Such an order is named for *NLRB v. Gissel Packing Co.*, 395 U.S. 575 (1969).

[2]The NLRB does not seek enforcement of its order.

resentation election was held; only 37 of the 79 votes cast were cast in favor of representation by the Union.

The Union filed a complaint with the NLRB. An ALJ found that Tower's actions constituted unfair labor practices in violation of sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), (3).[3] The ALJ also found that Tower had interfered with the election by creating an impression of surveillance. The ALJ recommended that Tower be ordered to cease and desist from anti-union activities, reinstate and provide restitution to the two employees who were fired for their support of the union-organizing drive, expunge all disciplinary reports motivated by union activity, and post a notice about employees' union-related rights in all posting areas. The ALJ also recommended a *Gissel* order requiring Tower to recognize and bargain with the Union as the exclusive representative of the employees.

---

[3]Section 8 of the National Labor Relations Act, 29 U.S.C. § 158(a), enumerates employer actions that constitute unfair labor practices. It reads, in pertinent part:

> It shall be an unfair labor practice for an employer—

> (1)  to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;

> . . . .

> (3)  by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization . . . .

Section 7 of the National Labor Relations Act, 29 U.S.C. § 157, enumerates the union-related rights of employees:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 1588(a)(3) of this title.

A three-judge panel of the NLRB affirmed all of the ALJ's recommended findings of fact and conclusions of law. The panel also affirmed all but one of the ALJ's recommended remedies: It disagreed that a *Gissel* order was warranted.

> Under the circumstances of this case, we find, contrary to the judge, that a *Gissel* bargaining order is not necessary. We find that the Board's traditional cease-and-desist and other affirmative remedies including posting of a notice will sufficiently address [Tower's] misconduct to ensure that a fair rerun election can be held, and that these remedies and the holding of a rerun election will satisfactorily protect and restore employees' Section 7 rights.

Consequently, the Board vacated the results of the first representation election, ordered a second election, and did not reach, as moot, the question whether Tower had improperly surveilled the first election.

The Union petitions for review only with respect to the Board's denial of a *Gissel* order, arguing that the Board's explanation was fatally deficient. No party disputes the Board's findings of fact or conclusions of law. Thus, this case presents the question whether the NLRB clearly abuses its discretion under the National Labor Relations Act when it gives a conclusory explanation for choosing not to adopt an ALJ's recommended remedy of a *Gissel* order while adopting the ALJ's recommended findings of fact, conclusions of law, and remaining remedies.[4] We answer that question "no."

**[1]** "The function of striking [an appropriate] balance to effectuate national labor policy is often a difficult and delicate responsibility, which the Congress committed primarily to the National Labor Relations Board, subject to limited judicial

---

[4]As far as we can tell, this is a question of first impression for the Ninth Circuit and, indeed, for any federal circuit.

review." *NLRB v. Truck Drivers Local Union No. 449*, 353 U.S. 87, 96 (1957). In determining the appropriate remedy for an unfair labor practice,

> [i]t is for the Board and not the courts . . . to make that determination, based on its expert estimate as to the effects on the election process of unfair labor practices of varying intensity. In fashioning its remedies under the broad provisions of § 10(c) of the Act (29 U.S.C. § 160(c)),[5] the Board draws on a fund of knowledge and expertise all its own, and its choice of a remedy must therefore be given special respect by reviewing courts.

*Gissel*, 395 U.S. at 612 n.32. "The Board's discretion in the selection of appropriate remedies is exceedingly broad . . . ." *Gen. Teamsters Local No. 162 v. NLRB*, 782 F.2d 839, 844 (9th Cir. 1986) (citing *Gissel*, 395 U.S. at 612 n.32; *Fibreboard Paper Prods. Corp. v. NLRB*, 379 U.S. 203, 215-16 (1964); *NLRB v. Fort Vancouver Plywood Co.*, 604 F.2d 596, 602 (9th Cir. 1979)).

Because of the Board's primary responsibility and expertise, appellate courts review the Board's choice of remedy for a clear abuse of discretion. *Cal. Pac. Med. Ctr.*, 87 F.3d at 308.[6]

---

[5]The text of 29 U.S.C. § 160(c) reads, in pertinent part:

> If upon the preponderance of the testimony taken the Board shall be of the opinion that any person named in the complaint has engaged in or is engaging in any such unfair labor practice, then the Board shall state its findings of fact and shall issue and cause to be served on such person an order requiring such person to cease and desist from such unfair labor practice, and to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this subchapter . . . .

[6]Courts also review whether the Board supported its findings of fact with substantial evidence, *Glendale Assocs., Ltd. v. NLRB*, 347 F.3d 1145, 1151 (9th Cir. 2003), applied the law correctly, *id.*, or imposed a rule arbitrarily, *Sever v. NLRB*, 231 F.3d 1156, 1164 (9th Cir. 2000). Here, only the Board's choice of remedy is at issue.

The Board clearly abuses its discretion if its order "is a patent attempt to achieve ends other than those that can be fairly said to effectuate the policies of the [National Labor Relations] Act." *Id.* (internal quotation marks omitted).

The Union does not allege that the decision is a patent attempt to achieve a nefarious end. Rather, the Union essentially argues that the Board's decision is insufficiently supported, by drawing a proposed parallel. The Union reasons that, because clearly articulated reasoning is required to issue a *Gissel* order, similarly, clearly articulated reasoning should be required if the ALJ recommends a *Gissel* order and the NLRB chooses not to issue one.

**[2]** " 'It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself.' " *Local Joint Exec. Bd. v. NLRB*, 309 F.3d 578, 583 (9th Cir. 2002) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983)). Here, the Board's order is sufficiently explanatory so that it can be reviewed effectively for a clear abuse of discretion. Its decision as to the *Gissel* order does not stand alone, but instead is the final piece to a puzzle constructed of the factual findings, conclusions of law, and remedial orders that the Board adopted from the ALJ's recommendation. The Board decided that all of the affirmative remedies recommended by the ALJ were warranted, short of a *Gissel* order. In other words, the Board decided that, given Tower's specific violations of the National Labor Relations Act, a cease-and-desist order, rehiring of and giving of back pay to the fired employees, expungement of disciplinary records, posting requirements, and a new election all were necessary—and, taken together, were sufficient—to remedy Tower's unfair labor practices during the first election process.

**[3]** It is true that, generally, when the Board disagrees with an ALJ's findings or conclusions, we conduct a more searching review. *See, e.g.*, *Int'l Union v. NLRB*, 834 F.2d 816, 819

(9th Cir. 1987) ("When, as here, the Board accepts the ALJ's basic factual and credibility determinations, it may draw inferences and conclusions from them different from the ALJ's. If it does so, however, we engage in a more searching review of the record, and the ALJ's findings become part of the record for review to be weighed against the evidence supporting the agency." (citations omitted)); *Penasquitos Vill., Inc. v. NLRB*, 565 F.2d 1074, 1078 (9th Cir. 1977) ("[A] reviewing court will review more critically the Board's findings of fact if they are contrary to the administrative law judge's factual conclusions."). That is because this court reviews the Board's findings for substantial evidence—not a clear abuse of discretion. *Glendale Assocs.*, 347 F.3d at 1151. Additionally, "because the ALJ sees and hears the witnesses, he or she is in the best position to draw testimonial inferences and to make findings with respect to credibility." *NLRB v. Big Bear Supermarkets # 3*, 640 F.2d 924, 928 (9th Cir. 1980). But when the Board adopts an ALJ's findings of fact, conclusions of law, and all remedies except for a *Gissel* order, the two levels of the agency have but one disagreement—whether the facts and conclusions require the particular remedy of a *Gissel* order. Whether a *Gissel* order is required to rectify Tower's unfair labor practices is precisely the kind of narrow policy decision reserved to the knowledge and experience of the Board. *See NLRB v. Bighorn Beverage*, 614 F.2d 1238, 1243 (9th Cir. 1980) ("[T]he determination of whether a bargaining order is warranted is a task, not for the reviewing courts, but for the Board based on its expert estimate as to the effects on the election of the unfair labor practices." (citing *Gissel*, 395 U.S. at 612 n.32)).

**[4]** The fact that courts require greater reasoning when the Board decides to issue a *Gissel* order is inapposite to the Board's decision instead to order the default remedy. "[E]lections are the preferred method for ascertaining employee sentiment." *NLRB v. W. Drug*, 600 F.2d 1324, 1326 (9th Cir. 1979) (citing *Brooks v. NLRB*, 348 U.S. 96, 104 & n.18 (1954)); *see also Gissel*, 395 U.S. at 602 ("The Board

itself has recognized, and continues to do so here, that secret elections are generally the most satisfactory—indeed the preferred—method of ascertaining whether a union has majority support."). A *Gissel* order is an "extreme remedy" warranted only under certain unusual scenarios. *Gardner Mech. Servs., Inc. v. NLRB*, 115 F.3d 636, 642 (9th Cir. 1997). Because of the extreme nature of a *Gissel* order, courts depart from the usual deference given to the Board's choice of remedy and require that the Board clearly articulate why a bargaining order is warranted and why other remedies are insufficient. *Id.* at 642-43. By contrast, when the Board chooses to issue the "preferred," standard remedy of a rerun election rather than the "extreme" remedy of a *Gissel* bargaining order, the justification and need for the safeguard of detailed, clear articulation are absent. Stated another way, the Board's decision to order an unextraordinary remedy does not merit an extraordinary explanation.

**[5]** In summary, we hold that the Board's explanation is sufficient for review and that its chosen remedies are not a clear abuse of discretion.

PETITION FOR REVIEW DENIED.