**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**KEYSTONE STEEL & WIRE, DIVISION OF KEYSTONE CONSOLIDATED INDUSTRIES, INC., Respondent.**

No. 80–2680.

United States Court of Appeals, Seventh Circuit.

Argued April 29, 1981.

Decided July 9, 1981.

As Amended July 10, 1981.

Richard Cohen, N.L.R.B., Washington, D. C., for petitioner.

Arthur S. Leonard, Seyfarth, Shaw, Fairweather & Geraldson, New York City, for respondent.

Before SWYGERT, Senior Circuit Judge,* SPRECHER, Circuit Judge, and WYATT, Senior District Judge.**

---

* At the time of oral argument, Judge Swygert was a circuit judge in active service; he assumed senior status on July 1, 1981.

SPRECHER, Circuit Judge.

In earlier proceedings, the National Labor Relations Board ("Board") found, and this court affirmed, that Keystone Steel and Wire, Division of Keystone Consolidated Industries, Inc. ("Company") had violated sections 8(a)(1), 8(a)(5), and 8(d)(3) of the National Labor Relations Act ("Act"), 29 U.S.C. §§ 158(a)(1), 158(a)(5), and 158(d)(3), by unilaterally changing a term and condition of employment covered by a collective bargaining agreement in force between the Company and the Independent Steelworkers' Alliance ("Union"). But although this court affirmed the Board's finding of an unfair labor practice, we found that the Board's remedial order was too broad. We remanded the case to the Board for issuance of a more limited order. The Board has now issued a new order. The Company challenges the supplemental order as again being too broad. Rejecting the Company's argument, we order enforcement of the supplemental order.

I

The Company and the Union were parties to a collective bargaining agreement which provided, among other things, for a hospital, medical, and surgical benefit program administered by Blue Cross-Blue Shield ("Blue Cross"). The Company, without bargaining with the Union, and in the face of the Union's refusal to consent, discontinued the Blue Cross plan and implemented a hospital, medical, and surgical benefit program administered by the Metropolitan Life Insurance Company ("Metropolitan"). The Board found that the Company's switch in health benefit packages amounted to a unilateral modification of a term and condition of employment which violated sections 8(a)(1), 8(a)(5), and 8(d) of the Act. *Keystone Steel & Wire*, 237 NLRB No. 91 (1978). The Board rejected the Company's argument that the switch in the health insurance plans was "merely" a switch in

** Honorable Inzer B. Wyatt, Senior District Judge for the Southern District of New York, is sitting by designation.

administrators, and held that the identity of the plan administrator was sufficiently related to the type, quality, and delivery of benefits to employees as to qualify as a mandatory subject of bargaining.

The Board ordered a three-part remedy. First, it ordered the Company to cease and desist from refusing to bargain regarding the administrator of the health care program. Second, the Board ordered the Company to cease and desist from any "like or related" unfair labor practice and from "otherwise refusing to bargain collectively in good faith" with the Union. Third, it ordered the Company to reinstate Blue Cross as the program administrator, if the Union requested such reinstatement, and to post the appropriate notice.

On review by this court, we affirmed the Board's conclusion that the switch of the health benefits programs is a mandatory subject of bargaining. *Keystone Steel & Wire v. NLRB*, 606 F.2d 171, 179 (7th Cir. 1979) ("*Keystone I*"). Rejecting the Company's argument that its action merely changed administrators, not benefits, we concluded that its action not only changed administrators but also "brought other changes which have a material and significant effect or impact upon the terms and conditions of employment." *Id.* Among the effects of the program change were the loss of a labor consultant to help with claims problems and the establishment of a lower payment allowance for certain medical or surgical procedures. *Id.* Thus, we affirmed the Board's finding of an unfair labor practice.

We concluded that the Board's remedy, however, was overly broad and seemed heavy-handed. *Id.* at 180. Specifically, we rejected a requirement that, upon request, Blue Cross be reinstated as the program administrator, because the parties had conceded that Blue Cross would have been unable to provide the program for all of the Company's divisions across the country. *Id.* We thus remanded the case to the Board for a more limited remedy.

Now, the Board has issued a supplemental remedial order having several aspects.

*Keystone Steel & Wire*, 248 NLRB No. 40 (1980). First, the Company must restore all benefits and services that were eliminated by the switch to Metropolitan. Second, the Company may not revoke or lessen any benefits currently enjoyed under the Metropolitan plan. Third, the Company must "make whole" any employees for any losses caused by the switch. Finally, the Company must post the appropriate notices. To implement the requirement that benefits and services be restored, the Board ordered two specific corrective measures:

(a) Utilization of the same geographical areas used by Blue Cross/Blue Shield for determining its usual and customary charges, or, in the alternative, payment of at least the same level of usual and customary benefits as Blue Cross/Blue Shield.

(b) Provision of a "labor consultant" to handle the health insurance claims of unit employees.

248 NLRB No. 40 at 4. The Board emphasized that the Company's restoration obligations were not limited to just these measures.

The Company now challenges this supplemental order as being too broad; the Board applies for enforcement. We reject the Company's arguments and enforce the Board's order.

## II

■ We begin with a review of the Board's power to fashion remedies for violations of the Act. Section 10(c) of the Act empowers the Board, upon finding that an unfair labor practice has been committed, to correct the effects of the unfair labor practice by requiring the violator "to take such affirmative action . . . as will effectuate the policies" of the Act. 29 U.S.C. § 160(c). The Board's power to fashion remedies is broad and discretionary, subject to limited judicial review. As the Supreme Court stated in *Fibreboard Paper Products Corp. v. NLRB*, 379 U.S. 203, 216, 85 S.Ct. 398, 405, 13 L.Ed.2d 233 (1964):

"[T]he relation of remedy to policy is peculiarly a matter for administrative

competence ....." .... "In fashioning remedies to undo the effects of violations of the Act, the Board must draw on enlightenment gained from experience." .... The Board's order will not be disturbed "unless it can be shown that the order is a patent attempt to achieve ends other then those which can fairly be said to effectuate the policies of the Act." (citations omitted).

■ In developing remedies for specific situations, the Board, drawing on its expertise in industrial relations, must attempt to create "a restoration of the situation, as nearly as possible, to that which would have obtained" but for the unfair labor practices. *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 194, 61 S.Ct. 845, 852, 85 L.Ed. 1271 (1941). The Board's choice of remedies to effectuate the policies of the Act is "peculiarly a matter for administrative competence." *Id.* In reviewing the Board's remedies, "courts must not enter the allowable area of the Board's discretion and must guard against the danger of sliding unconsciously from the narrow confines of law into the more spacious domain of policy." *Id.* The Board's discretion to fashion remedies is not unfettered, however. The Board's remedies must be "calculated to effectuate a policy of the Act," *NLRB v. Seven-Up Bottling Co.*, 344 U.S. 344, 349, 73 S.Ct. 287, 290, 97 L.Ed. 377 (1953), and must not be punitive, *Local 60, United Brotherhood of Carpenters v. NLRB*, 365 U.S. 651, 655, 81 S.Ct. 875, 877, 6 L.Ed.2d 1 (1961).

### III

■ The first question, then, is whether the supplemental order does effectuate a policy of the Act. A major policy of the Act is to stabilize industrial relations by fostering collective bargaining agreements equally binding employers and unions. *See, e. g., Textile Workers Union v. Lincoln*

*Mills*, 353 U.S. 448, 453–54, 77 S.Ct. 912, 916, 1 L.Ed.2d 972 (1957), and *H. J. Heinz Co. v. NLRB*, 311 U.S. 514, 523–26, 61 S.Ct. 320, 324–25, 85 L.Ed. 309 (1941). Industrial stability depends, in part, upon the binding nature of collective bargaining agreements. Both employer and employee acceptance of any given agreement, and indeed, of the very concept of collective bargaining, depend upon a guarantee that their agreement will not be unilaterally altered. Applied to this case, which involves terms and conditions of employment, the policy behind the Act requires that no change in those terms and conditions be made without the express consent of the employees, through their union.

Where, as here, the employees' expectation for "no change without consent" is defeated by the unilateral action of the employer, the stability of the bargaining relationship is impaired. The likely effect of such instability is to create perceptions of unfairness and of union weakness;[1] the reaction to these perceptions may be increased militancy and labor unrest. Thus, we conclude that the Board's remedy here, correcting a unilateral change in a term or condition of employment,[2] is consistent with an important policy behind the Act.

### IV

The next question is whether the Board's supplemental order is punitive or otherwise beyond the scope of the Board's authority. To determine the propriety of the supplemental order, we must consider it in light of the defect in the original order. In *Keystone I*, this court found the unilateral change of program administrators to be an unfair labor practice because the Union did not consent to the change. Although the Metropolitan program offered some additional benefits, it also caused the loss of a labor consultant and it provided lower bene-

---

1. *Cf. NLRB v. C & C Plywood Corp.*, 385 U.S. 421, 429 n.15, 87 S.Ct. 559, 564 n.15, 17 L.Ed.2d 486 (1967) ("For the real injury in this case is to the union's status as bargaining representative ....").

2. As in our previous decision, *Keystone I*, 606 F.2d at 179, we should not, and do not, consider the merits of the Company's action. That the Metropolitan plan offers some additional benefits to employees is irrelevant. The relevant fact is that the Union never consented to the change.

fits for some medical procedures. We found the order requiring reinstatement of Blue Cross to be too broad, but suggested that an order requiring the Company to correct detrimental differences would be more appropriate. *Keystone I,* 606 F.2d at 180. The supplemental order complies precisely with our suggestion. The supplemental order no longer requires reinstatement of Blue Cross, but requires the Company to restore all benefits enjoyed by the employees before the change in administrators, including the labor consultant and any health benefits reduced by the change. The supplemental order also directs the company to "make whole" any employees who sustained any monetary losses as a result of the Company's action.

Not only is the Board's supplemental order fully encompassed within the scope of our remand, but it is also consistent with precedent. The Board's order here is a traditional "make whole" order which this court and others typically have upheld in unlawful unilateral change cases where the orders provide both for restoration of working conditions or benefits improperly denied and for monetary compensation for any losses sustained. *See, e. g., Fibreboard,* 379 U.S. at 215–17, 85 S.Ct. at 405–06; *Davis v. NLRB,* 617 F.2d 1264, 1273 (7th Cir. 1980); *Zim's Foodliner, Inc. v. NLRB,* 495 F.2d 1131, 1144 (7th Cir.), *cert. denied,* 419 U.S. 838, 95 S.Ct. 66, 42 L.Ed.2d 65 (1974); *Hinson v. NLRB,* 428 F.2d 133, 136–37 (8th Cir. 1970); *NLRB v. Scam Instrument Corp.,* 394 F.2d 884, 887 (7th Cir.), *cert. denied,* 393 U.S. 980, 89 S.Ct. 449, 21 L.Ed.2d 441 (1968); *NLRB v. Central Ill. Public Service Co.,* 324 F.2d 916, 919 (7th Cir. 1963); and *Leeds & Northup Co. v. NLRB,* 391 F.2d 874, 879–80 (3d Cir. 1968).

The Company argues that here the Board is doing more than restoring benefits lost by the Company's unilateral action. It complains that under the Board's supplemental order, in situations where the Metropolitan plan offers greater benefits than the Blue Cross plan, the employees must receive the higher Metropolitan benefits and in situations where the Metropolitan plan pays less, the employees must be "made whole" for any out-of-pocket loss. In other words, the Company complains that the supplemental order causes employees to receive greater benefits than they would have received had the Company not committed the unfair labor practice. This disingenuous argument must fall.

When the Company unilaterally changed insurance plans, its action resulted in some favorable and some unfavorable changes to the employees. The Board's policy in cases of combined favorable and unfavorable unilateral changes is to order a return to the status quo ante with regard to the unfavorable changes, but to not penalize employees by ordering revocation of the favorable changes. *See Moody Chip Corp.,* 243 NLRB No. 36, 18 (1979); and *North American Mfg. Co.,* 224 NLRB 1252, 1260 (1976). We endorse the Board's policy. In effect, the favorable change becomes the established condition of employment. An employer can change this condition only as it can change any condition—by giving notice of the proposed change and by successfully bargaining with the union to secure the union's approval.

The Board's policy is entirely consistent with the purposes of the Act. The refusal to revoke favorable changes simply ensures that, under whatever formula the Company implements to restore the employees' health benefits, the Company cannot use the Board's order as a license to abolish or alter any of the favorable changes resulting from its unlawful conduct without fulfilling its statutory duty to bargain. That some employees ultimately may receive greater benefits than they would have received if the Company had not acted illegally is not, therefore, the result of any defect in the Board's order. Rather, any potential for greater benefits is due entirely to the Company's unfair labor practice. Thus, the Board is not impermissibly dictating terms of the parties' contract. It is merely ordering its traditional remedy of a return to the status quo ante, combined with its traditional refusal to penalize employees by revoking benefits conferred as a result of an unfair labor practice.

The Company also argues that, since the original order did not include a monetary "make whole" provision, the supplemental order's inclusion of such a remedy necessarily means that it cannot be "more limited" than the original remedy, as we ordered in *Keystone I*, 606 F.2d at 180. But this argument is also wide of the mark.

Our objection to the original order was that it ordered the Company, upon request by the Union, to reinstate Blue Cross as the program administrator for all of the Company's divisions, when such reinstatement would have been economically disruptive, if not impossible. That the Board has now issued its traditional "make whole" order, although it failed to do so in its initial order, does not run afoul of our concern with the initial order. The Company cites no law, and we know of none, limiting the remedies in supplemental orders to those contained in original orders. *Cf. NLRB v. Allied Products Corp.*, 629 F.2d 1167, 1173 (6th Cir. 1980) ("As a consequence of the remand, the Board expanded its make whole remedy to include [persons previously excluded]. We believe that the Board's expansion of the remedy is consistent with the Act . . . ."). Thus, we conclude that the subsequent addition of the "make whole" remedy is proper. The Board's supplemental order does not flout, but is consistent with, our instructions on remand.

Finally, the Company admits that no employees have filed claims or grievances for monetary losses as a result of the change in health care benefits over three years ago. Therefore, it seems unlikely that the Company will suffer any significant loss as a result of the "make whole" order. But as we have discussed, even if the Company were to suffer a significant loss, we find the "make whole" order entirely proper.

## V

The Company's last arguments are that the Board's order requiring the Company to ensure that in no circumstances shall benefits be lower than those currently enjoyed will allow windfalls to employees and will create severe administrative burdens. Neither of these arguments is persuasive.

First, contrary to the impression the Company attempts to create, in no case will employees receive any benefits above the cost to the employee of the health services provided. A brief examination of the effect of the Board's supplemental order on a hypothetical medical procedure costing $500 is useful. If the Blue Cross plan allowed a benefit of $500 but the Metropolitan plan allows a benefit of $400, the Company must "make whole" an employee for the $100 penalty created by the Company's change. But if the Metropolitan plan allows $600, the employee does not receive an extra $100; the employee only receives reimbursement for the cost of the care. If both plans allow less than $500, the employee must absorb the difference between the cost and the higher amount allowed. Thus, the employee receives the higher amount allowed by either plan, but under no situation does the higher benefit create a windfall for the employee.

Finally, the Company claims that the cost of maintaining two benefit tables—the Blue Cross table and the Metropolitan table—must be "severe". This argument falls of its own weight, for the Company argues at length that the Metropolitan benefits are better than the Blue Cross benefits—obviously, the Company already has and maintains two benefit tables. In any event, the Company proffers no specific evidence of any administrative burden and its argument amounts to nothing more than mere paper pleading. Furthermore, any administrative inconvenience must be blamed on the Company's violation of the Act.

## VI

We have carefully considered all of the other arguments of the parties not specifically discussed in this opinion. We find those arguments either wanting merit or insufficiently important to warrant extended discussion; their discussion would not have altered this result. For the foregoing reasons, the Board's supplemental order is

Enforced.