**WILLAMETTE INDUSTRIES, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**Graphic Communications Union Local 17–M, AFL–CIO, CLC, Intervenor.**

**No. 00–1366.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 4, 2001.

Decided June 19, 2001.

Stanley C. Fickle argued the cause for petitioner. With him on the briefs were Peter A. Morse, Jr., Julie C. Sipe and Richard H. Streeter.

Steven B. Goldstein, Attorney, National Labor Relations Board, argued the cause for respondent. With him on the brief were Leonard R. Page, Acting General Counsel, John H. Ferguson, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, and Julie B. Broido, Senior Attorney. Anne M. Lofaso, Attorney, and Howard E. Perlstein, Deputy Assistant General Counsel, entered appearances.

James B. Coppess argued the cause for intervenor. With him on the brief were Laurence Gold and William R. Groth.

Before: WILLIAMS, GINSBURG and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

The National Labor Relations Board determined that the refusal of Willamette Industries to negotiate with the Graphic Communications Union Local 17–M after the Union lost a decertification election was an unfair labor practice (ULP), in violation of §§ 8(a)(1) and (5) of the National Labor Relations Act. Because the Board's decision is inconsistent with the rule the Board purported to apply, we grant the petition and remand the case to the Board for further consideration.

## I. Background

Willamette manufactures continuous business forms at several locations, only some of which are unionized. *See Willamette Indus., Inc.*, 331 NLRB No. 73, slip op. at 2, 2000 WL 888366 (2000) (*"Decision"*). The Union, which represents workers at Willamette's Indianapolis plant, failed in 1997 to win a majority of votes in a decertification election the Board held at the request of an employee. *See id.* at 2. The Union immediately filed objections to the employer's conduct during the election campaign, but before the Board hearing officer issued his report Willamette announced that it would no longer negotiate with the Union because the outcome of the decertification election gave it a "good-faith doubt that the Union represented a majority of the employees." *Id.* at 3.

The Union's objection concerned two meetings that Willamette held during the decertification campaign in which Company officials spoke to the Indianapolis employees about the availability of 401(k) plans at Willamette's non-union plants. Willamette and the Union disagree whether the Company stated it would make the plans available only at non-union plants; such a statement would likely be regarded as a threat or a promise, and therefore a ULP under the Act. The NLRB hearing officer who heard the Union's objections did not reach a decision until after Willamette had notified the Union that it would not bargain; when he did rule, he determined that the Company's statements constituted "objectionable conduct" sufficient to warrant setting aside the election results and holding a new election. *Id.* at 3 & n. 1.

Willamette and the Union then signed a "Stipulated Election Agreement" in which Willamette agreed not to contest the hearing officer's findings and the parties set an early date for the rerun election. Willamette contends, and the ALJ in this case found, that the Company signed the agreement "in an effort to expedite a rerun election." *Id.* at 3. The day after the agreement was signed, however, the Union charged Willamette with having violated the Act; among the ULPs alleged were the statements the Company allegedly made during the decertification campaign regarding the 401(k) plans and the Company's refusal to bargain with the Union after the decertification election. The Regional Director issued a complaint and simultaneously dismissed the decertification petition, without prejudice to its reinstatement after the complaint was resolved. The Union then renewed its request to bargain and Willamette again refused. *Id.* at 3.

The ALJ held that the Company had committed only one of the alleged ULPs. Asserting he was not bound by the decision of the hearing officer in the prior proceeding, the ALJ determined that Willamette made no illegal promises or threats at the meetings where 401(k) plans were discussed. *See Decision* at 6–8. The ALJ did hold, however, that Willamette's refusal to bargain in the wake of the disputed decertification election was a ULP because "an employer has a statutory obligation to bargain with a union[] which ostensibly has lost a decertification election until the certification results issue." *Id.* at 8 (citing *W.A. Krueger Co.*, 299 NLRB 914, 916, 1990 WL 161282 (1990)). The ALJ recommended that Willamette be required "[o]n request, [to] bargain in good faith with the Union" and that the decertification proceedings "be reinstated, and that a rerun election be held." *Id.* at 10–11.

The Board accepted all the ALJ's conclusions regarding the alleged ULPs, holding that Willamette's only violation of the Act was its refusal to bargain. Although the Board noted that in making that deter-

mination the ALJ had relied upon *W.A. Krueger, see Decision* at 2 n.8, it had its own reason for reaching the same result. The Board first stated its longstanding general rule that an "employer may rebut the presumption of [a union's] continued majority status by showing that . . . the employer has a good-faith doubt concerning the union's majority status." *Decision* at 1. The Board then held, however, that when Willamette "voluntarily waived its right to appeal" the hearing officer's determination that the decertification election should have been set aside, it left the result of that election "tainted by [its] own objectionable conduct"; Willamette thus had no basis for a good-faith doubt. *Id.* The Board therefore adopted the ALJ's proposed order requiring Willamette to bargain with the Union. It omitted from the order, however, the ALJ's proposed paragraph providing for the decertification proceeding to be reopened and a rerun election held. *Decision* at 2, 11.

Willamette petitions for review of both the Board's holding that its refusal to bargain was a ULP and the Board's failure to order a rerun of the decertification election. The Union intervenes on behalf of the Board.

## II. Analysis

The Board recently ruled that an employer may "withdraw recognition from an incumbent union only where the union has actually lost the support of a majority of the bargaining unit employees." *See Levitz Furniture Co. of the Pacific, Inc.*, 333 NLRB No. 105, slip op. at 1, 2001 WL 314139 (2001). Recognizing that it was overruling a venerable line of cases, however, the Board said it would in "pending cases" apply its old rule, under which an

employer could withdraw its recognition of a union if it had a "reasonable uncertainty of the union's majority status." *Id.* This case was "pending" when *Levitz* was decided, so the old "'good-faith doubt' standard," *id.* at 1, applies.

■ As the Supreme Court has interpreted that standard, an employer may withdraw its recognition of a union if it has "a genuine, reasonable uncertainty about whether [the union] enjoy[s] the continuing support of a majority of union employees." *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 367, 118 S.Ct. 818, 139 L.Ed.2d 797 (1998). Willamette makes the straightforward point that a union's failure to garner a majority of the votes cast in a decertification election creates a reasonable uncertainty. To this the Board offers but one response: that because Willamette "voluntarily waived its right to appeal" the hearing officer's determination that it had engaged in objectionable conduct during the election campaign, "the election results could not serve as a valid indicator of employee sentiment."* *Decision* at 1.

■ In holding that Willamette's waiver precludes it from relying upon the outcome of the election as a basis for good-faith doubt, the Board misapplies its own standard. Even if Willamette's waiver can be construed as an acknowledgment that "the results of the tally . . . stood tainted," *Decision* at 1 — a matter cast in some doubt by the ALJ's statement that Willamette agreed to the waiver "in an effort to expedite a rerun election," *id.* at 3 — this court has clearly held that objectionable conduct during an election campaign does not always carry such a taint. Because "objectionable conduct" is defined as any

---

* Because the Board does not rely upon it, *Decision* at 1, 2 n.8, we do not consider the argument of the Union (which the ALJ adopted) that, even under the good-faith

doubt standard an employer must continue to negotiate with a union "until the certification [of election] results [formally] issue[s]." *Id.* at 8 (citing *W.A. Krueger*, 299 NLRB at 916).

action by an employer sufficient merely to upset the "laboratory conditions under which an election is required to be conducted," in many cases the conduct that is deemed objectionable will not have created any taint, that is, it will not have "significantly contribute[d] to [the union's] loss of majority or to the factors upon which a doubt of such majority is based." *St. Agnes Med. Ctr. v. NLRB,* 871 F.2d 137, 146–47 (D.C.Cir.1989). The Board must therefore consider whether the objectionable conduct in the particular case before it significantly contributed to the employer's good-faith doubt. *See id.* at 147. By relying exclusively upon Willamette's waiver, the Board pretermitted that step; we must therefore remand the case to the Board for it to fill the gap in its analysis. It will then be for the Board to consider in the first instance Willamette's argument that no objectionable conduct short of a ULP is a bar to an employer claiming a good-faith doubt about a union's majority status based upon the union's having lost a decertification election. *Cf. id.* at 146–47 (delineating criteria for good-faith doubt where employer has committed ULPs).

Willamette also argues that the Board, by omitting from its remedial order any reference to a rerun decertification election while retaining the requirement that Willamette "[o]n request, bargain in good faith," *Decision* at 10, has de facto imposed upon Willamette a so-called *Gissel* bargaining order, *see NLRB v. Gissel Packing Co., Inc.,* 395 U.S. 575, 614, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969), without even suggesting that this case meets the criteria for such relief, *see, e.g., Garvey Marine, Inc. v. NLRB,* 245 F.3d 819, 826–27 (D.C.Cir.2001) (describing review of *Gissel* orders). The Board denies that it has imposed a *Gissel* order, allows that its omission of any reference to a rerun election is without prejudice to the possibility of holding another election, and justifies its omission of such a reference on the ground that the "decertification case was not a part of the instant unfair labor practice proceedings and therefore [wa]s not before [the Board] for resolution." *Decision* at 1 n.2.

We doubt whether we may consider Willamette's argument because the Company "could have objected to [this aspect of] the Board's decision in a petition for reconsideration or rehearing" but did not, and its "failure to do so prevents consideration by the courts." *Woelke & Romero Framing, Inc. v. NLRB,* 456 U.S. 645, 666, 102 S.Ct. 2071, 72 L.Ed.2d 398 (1982); *see* 29 U.S.C. § 160(e). Willamette claims that it excepted to the decision of the ALJ on the ground that it cannot be required to bargain unless the Union wins a rerun election; but this is a different claim than the one it makes here, namely, that the Board's order, by a combination of what it does and what it does not say, imposes such a requirement. Indeed, Willamette could not have made this argument in excepting to the decision of the ALJ because the issue arose only when the Board itself departed from the order recommended by the ALJ. *See Decision* at 1 n.2. In any event, we would not reach this argument even if we had jurisdiction to do so, because the Board may well on remand issue an order to which the present objection does not appertain. *See LCF, Inc. v. NLRB,* 129 F.3d 1276, 1283 (D.C.Cir.1997) (court "need not reach ... challenge to the remedy" when Board order on liability not based upon substantial evidence).

### III. Conclusion

For the foregoing reasons, we deny enforcement of the Board's order. We remand this case to the agency for it to consider whether Willamette's objectionable conduct so contaminated the decertification election as to leave the Company

without a good-faith basis for doubting the Union's majority support.

*So ordered.*