**SCEPTER, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 00-1541.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 18, 2002.

Decided Feb. 22, 2002.

Ronald G. Ingham argued the cause for petitioner. With him on the briefs was James P. Daniel.

Anne Marie Lofaso, Attorney, National Labor Relations Board, argued the cause for respondent. With her on the briefs were Arthur F. Rosenfeld, General Counsel, John H. Ferguson, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, and Julie B. Broido, Supervisory Attorney.

David A. Rosenfeld was on the brief for amicus curiae International Association of Bridge, Structural, Ornamental Iron Workers, AFL-CIO, Shopmen's Local Union #733, in support of respondent.

Before: EDWARDS, HENDERSON, and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

Petitioner Scepter, Inc. ("Scepter") seeks review of two orders of the National Labor Relations Board ("NLRB" or "Board"). The primary order under review finds that Scepter violated the National Labor Relations Act ("NLRA") and directs Scepter to bargain with a duly elected union. *See Scepter Ingot Castings, Inc.,* 331 N.L.R.B. No. 153, 2000 WL 1234702 (Aug. 28, 2000) ("Order"). Because the Order is supported by substantial evidence in the record, we deny Scepter's petition for review and enforce the Order.

## I. BACKGROUND

Our review of the facts is based on the Board's findings when they are supported by substantial evidence on the record as a whole. *See Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951). Scepter is an aluminum recycling company. Following an election, the NLRB certified Shopman's Local Union No. 733 of the International Association of Bridge, Structural, and Ornamental Iron Workers, AFL-CIO ("the Union") as the exclusive collective bargaining representative of employees at Scepter's New Johnsonville, Tennessee facility. Bargaining commenced on July 22, 1993 and continued for about two years. The process began productively enough and eventually ground to a near standstill. Beginning in mid-1994, Union bargaining committee member Penney Hensley became frustrated and told Scepter managers that negotiations had reached a stalemate, that she felt the Union had no standing, and that she felt the employees no longer wanted the Union to represent them. *See* Transcript of Administrative Law Judge Hearing at 314-18, 321-22, *reprinted at* Deferred Appendix ("App.") 281-85, 288-89. There is no other evidence, however, of other employees or Union agents expressing such sentiments to members of management at Scepter.

The parties made little progress in bargaining in early 1995. However, some negotiations continued and the parties actually reached agreement on issues as late as their final meeting in May, 1995. Counsel for Scepter, who was personally involved in the bargaining process, blames the lead Union negotiator for refusing to address matters on which the two had tentatively agreed in a number of off-the-record meetings. The record does not substantiate this claim. Rather, the record establishes that, following the final bargaining meeting, the parties exchanged messages about setting up another bargaining meeting. In June, the Union representative sent a letter to Scepter regarding proposed meeting dates, and he followed up the letter with phone messages. *See* App. 339; Order at 5. The Union wrote to Scepter again in October to propose bargaining dates. *See* App. 340.

The Board found that by October 1, 1995, Scepter unilaterally withdrew its recognition of the Union as the employees' bargaining representative and unilaterally implemented changes to mandatory subjects of bargaining, including wages and health benefits. The Board also found that Scepter instituted a new work rule – prohibiting the insertion of steel banding into Scepter's furnaces – without notifying the Union, in violation of NLRA § 8(a)(5). Scepter also required employees to sign a statement acknowledging that anyone who violated the rule would be terminated. Scepter discharged an employee for refusing to sign the statement. The Board

ordered Scepter to reinstate the employee and bargain with the Union.

## II. DISCUSSION

■■■ A certified union enjoys an irrebuttable presumption of majority status for the first year, and a rebuttable presumption thereafter. *See Sullivan Indus. v. NLRB*, 957 F.2d 890, 897 (D.C.Cir.1992). After the initial year, an employer may lawfully withdraw recognition of a union only if it can demonstrate appropriate circumstances that justify a conclusion that the union has lost majority support. Under the established legal regime, in order to justify its withdrawal of recognition of the Union, Scepter was required to demonstrate that it had a "genuine, reasonable uncertainty," grounded in objective considerations, as to whether the Union enjoyed the support of most unit employees. *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 367, 118 S.Ct. 818, 823, 139 L.Ed.2d 797 (1998). This "goodfaith uncertainty" standard has since been revised by the Board. *See Levitz Furniture Co. of the Pacific, Inc.*, 333 N.L.R.B. No. 105, at 1, 12, 2001 WL 314139 (Mar. 29, 2001) (revising the standard for future cases); *see also Willamette Indus., Inc. v. NLRB*, 253 F.3d 720, 723 (D.C.Cir.2001) (recognizing that the traditional standard applies to cases that were pending when *Levitz* was decided).

Scepter acknowledges that it withdrew recognition of the Union and unilaterally implemented changes with respect to mandatory subjects of bargaining. Scepter claims that these actions were justified, however, because it possessed a genuine, reasonable uncertainty as to whether the Union enjoyed the support of a majority of employees. It contends that the Union abandoned the bargaining unit, a suggestion the Board correctly rejected. The record indicates that the Union repeatedly

attempted to continue negotiations and proposed dates for future meetings. The Board also found that the Union agent's phone calls to Scepter officials were not returned. In other words, the record in no way indicates that the Union had abandoned the bargaining unit.

■■■ Scepter's reliance on alleged employee comments to the effect that no one wanted the Union anymore is similarly unavailing. Only employee Hensley ever made such a comment to Scepter's managers. The Board correctly concluded that the comments of a single employee, out of a unit of seventy, were insufficient objective evidence of a loss of majority support. *Cf. Allentown Mack*, 522 U.S. at 369, 118 S.Ct. at 824 (noting that even 20% firsthand confirmed opposition to the Union would not alone be enough to require a conclusion of reasonable doubt).

■■■ On this record, it is clear that Scepter violated NLRA §§ 8(a)(5) and 8(d) when it declined to continue bargaining with the Union and then implemented unilateral changes to wages, benefits, and work rules. *See Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 198, 111 S.Ct. 2215, 2221, 115 L.Ed.2d 177 (1991) (citing *NLRB v. Katz*, 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962)). Scepter argues that the Union waived its right to bargain over the changes by failing to protest them, but this argument fails because the Union did not receive notice of the changes "sufficiently in advance of" their actual implementation to allow for reasonable reaction and discussion. *ILGWU v. NLRB*, 463 F.2d 907, 919 (D.C.Cir.1972). Scepter further argues that its new absolute ban on inserting steel banding into the furnaces was not a substantial enough change to trigger its duty to bargain. The new rule, however, converted a previously informal general policy into a hard and fast rule whose violation would subject an em-

ployee to summary discharge. The rule also made signing the declaration a new condition of continued employment. Thus, the Board correctly concluded that the change had a significant effect on the conditions of employment and did not merely add a sanction to an existing rule.

■ Scepter also challenges the Board's imposition of an affirmative bargaining order. Because Scepter failed to raise a particularized challenge to the bargaining order before the Board, this court has no authority to address the issue. *See* NLRA § 10(e), 29 U.S.C. § 160(e). Scepter only excepted generally to the proposed order and to the finding that the charging parties were "entitled to any remedy." We have repeatedly held that such a generalized exception to a remedial order is insufficiently specific to preserve a particular objection for appeal. *See Prime Serv., Inc. v. NLRB*, 266 F.3d 1233, 1241 (D.C.Cir.2001); *Quazite Div. of Morrison Molded Fiberglass Co. v. NLRB*, 87 F.3d 493, 497 (D.C.Cir.1996). The Board also correctly rejected Scepter's untimely petition for reconsideration. *See* Petition for Reconsideration of Order ¶¶ 4-8, *reprinted at* App. 56-59.

■ Even if Scepter had raised its challenges to the bargaining order in an appropriate and timely fashion, those challenges would have failed. The Board adequately justified the bargaining order, applying the factors set forth by this court in *Vincent Industrial Plastics, Inc. v. NLRB*, 209 F.3d 727, 738-39 (D.C.Cir.2000). *See* Order at 1-2. Scepter argues that the Board should have granted its petition to reopen the record to consider evidence of employee turnover. This argument ignores the fact that this case does not involve a contested union election and a *Gissel* bargaining order. *See NLRB v. Gissel Packing Co.*, 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969). Outside the tradition-al *Gissel* context, the simple fact of employee turnover since Scepter's withdrawal of recognition would not, without more, have been enough to require a different decision by the Board. *See NLRB v. Creative Food Design Ltd.*, 852 F.2d 1295, 1300-02 (D.C.Cir.1988). Thus, the Board was not required to reopen the record to consider evidence of employee turnover.

\* \* \* \*

We are not unsympathetic to some of the concerns expressed by Scepter's counsel during oral argument. Counsel claimed that he has never been more frustrated and perplexed by collective bargaining than he was during the negotiations in this case. He described a scenario that indeed sounded bedeviling, because, according to counsel, he could find no strategy to coax the Union agent to the bargaining table to bring the parties' negotiations to a mutually satisfactory conclusion. Counsel said that, at one point, he arranged for some off-the-record meetings with the Union agent, during which they agreed on a number of substantive issues. Counsel represented that he even took the unusual step of agreeing to a union check-off provision to facilitate a contract, but the Union negotiator still appeared unable to close the deal. And, according to counsel, the purported telephone calls from the Union agent to company officials were not meaningful gestures to resume negotiations, because the Union agent never focused on substantive issues. Thus, when it appeared that nothing fruitful was coming from the Union in the context of bargaining, company counsel and members of management apparently gave up.

We have no reason to doubt counsel's characterization of what appeared to him to be pointless collective bargaining. The record in this case does not indicate that Scepter engaged in a pattern of anti-union

activities, thus suggesting that company officials may well have been willing to execute an agreement with the Union. On the other hand, we also have no reason to accept counsel's characterization, as it is without support in the record. In any event, the situation at Scepter – if it was as counsel says – would not have been the first time that collective bargaining failed due to inept interactions between the parties. Nor does counsel's belated explanation excuse the unfair labor practices found by the Board.

### III. CONCLUSION

For the foregoing reasons, Scepter's petition for review is denied and the Board's cross-application for enforcement of its Order is granted.