# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Decided May 16, 2006

No. 04-1267

SCEPTER, INC.,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

———

Consolidated with
04-1362

———

On Petition for Review and Cross-Application for
Enforcement
of an Order of the
National Labor Relations Board

———

*Ian K. Leavy* and *Ronald G. Ingham* were on the brief for petitioner Scepter, Inc.

*Arthur F. Rosenfeld,* General Counsel, *John H. Ferguson,* Assistant General Counsel, *Aileen A. Armstrong*, Associate General Counsel, *Robert J. Englehart* and *Philip A. Hostak*,

Attorneys, National Labor Relations Board, were on the brief for respondent.

Before: GINSBURG, *Chief Judge*, and ROGERS and BROWN, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* GINSBURG.

GINSBURG, *Chief Judge*: Scepter, Inc., petitions the court for review of a 2004 order of the National Labor Relations Board in which the Board held it lacked jurisdiction to modify the 2000 order we had previously enforced against the Company, *see Scepter, Inc. v. NLRB*, 280 F.3d 1053 (2002). Because Scepter failed to raise its current objection to the earlier order before we enforced it, we deny the Company's petition for review and grant the Board's cross-application for enforcement.[*]

## I. Background

After failing to reach an agreement with the union that represented its employees, Scepter unilaterally changed the employees' wages and benefits. *Id.* at 1055. More specifically, Scepter modified the coverage provided by its medical insurance plan and made the plan contributory, requiring that each employee pay a monthly premium of $19 to $24. *Scepter Ingot Castings, Inc.*, 331 N.L.R.B. 1509, 1514 (2000) (hereinafter the 2000 Order). Scepter also increased each employee's wages by 45 cents per hour, 15 cents of which it said was "[t]o help offset" the insurance

---

[*] This case was considered upon the record from the National Labor Relations Board and upon the briefs submitted by parties. *See* FED. R. APP. P. 34(a)(2); D.C. CIR. RULE 34(j).

premiums. *Id.* In the 2000 Order, the Board held Scepter made these unilateral changes in violation of §§ 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1), (a)(5). 331 N.L.R.B. at 1509, 1516. Accordingly, the Board ordered Scepter to bargain with the union; to "rescind either or both of the ... unilateral changes" -- but only "[i]f requested by the Union"; and to "[m]ake employees whole for any expenses ensuing" from the Company's adoption of the new medical insurance plan. *Id.* at 1510, 1517.

Scepter petitioned this court for review of the 2000 Order, raising two objections. First, Scepter argued its unilateral actions were justified because "it possessed a genuine, reasonable uncertainty ... whether the Union enjoyed the support of a majority of employees." *Scepter*, 280 F.3d at 1056. Second, the Company objected to the imposition of a bargaining order. We rejected the first argument and held we could not address the second because the Company's objection was not sufficiently specific to preserve the issue for review. *Id.* at 1056-57, citing § 10(e) of the NLRA, 29 U.S.C. § 160(e) ("No objection that has not been urged before the Board ... shall be considered by the court").

Thereafter the union requested rescission of the change in medical insurance plans but not of the wage increase, and a controversy arose over the amount of back pay Scepter owed its employees in these circumstances. The General Counsel issued a "Compliance Specification" stating that Scepter should be required to (1) stop charging employees for medical insurance and (2) pay each "employee ... an amount equal to" the premiums he or she had theretofore been charged, plus interest. Scepter objected to the latter provision on the ground it would give the employees a windfall because they already

had been compensated for the premiums they paid by the concurrent increase in the wages they received. Scepter therefore requested an "offset" against its "make whole" liability in the amount of the increased wages it had paid.

An Administrative Law Judge, citing § 10(e), rejected Scepter's request on the ground that, the court having enforced it, the Board "ha[d] no authority to modify" the 2000 Order, which clearly required Scepter, upon the union's request, to "rescind either or both" of the unilateral changes. *Scepter Ingot Castings, Inc.*, 341 N.L.R.B. No. 134, 2004 WL 1174585, at *9 (May 24, 2004) (hereinafter the 2004 Order). The Board affirmed, *id.*, at *2, Scepter petitioned for review, and the Board cross-applied for enforcement. We will uphold the Board's legal conclusions if they are "reasonably defensible," *Wackenhut Corp. v. NLRB*, 178 F.3d 543, 553 (D.C. Cir. 1999).

## II. Analysis

In support of its claim that the Board had jurisdiction in 2004 to modify the 2000 Order, Scepter first argues the Board has an obligation to ensure the remedy enforced at the compliance stage of a proceeding is appropriate, regardless whether the order imposing that remedy has been enforced by the court of appeals. Scepter next contends its request for an offset was timely because the 2000 Order was ambiguous with respect to the precise remedy being imposed; consequently, at the compliance stage of these proceedings it sought only clarification of its obligations under, and not a modification of, the 2000 Order.

Scepter argues the Board had jurisdiction to allow the requested offset because "[d]etermining and calculating the

appropriate and exact remedy amount" are typically "deferred to the compliance or back pay proceeding of a dispute." Citing our decision in *Grondorf, Field, Black & Co. v. NLRB*, 107 F.3d 882 (1997), Scepter maintains that when "so directed by a U.S. Court of Appeals, the Board has the responsibility to allow an employer to demonstrate ... any necessary remedy [must] be offset or reduced to avoid an improper windfall to employees." The Board responds that it has no authority to modify the remedy specified in a court-enforced order unless it had in that order reserved for later consideration a specific question pertaining to that remedy.

The Board is correct. Section 10(e) of the NLRA provides: "Upon the filing of the record with it the jurisdiction of the court shall be exclusive and its judgment and decree shall be final." 29 U.S.C. § 160(e). The Board obviously cannot modify an order over which the court has "exclusive" jurisdiction or that the court has enforced in a final judgment. *Grondorf* is not, as Scepter suggests, to the contrary: The employer there challenged the remedy as a windfall in its petition for judicial review of the order imposing the remedy, not in an objection to a post-enforcement Compliance Specification. 107 F.3d at 883, 888.

Although Scepter is surely correct that a court can order the Board to modify an unlawful remedy, the court can provide such relief only to a petitioner that timely seeks it. The first and only opportunity for doing so is ordinarily in a petition for review of the Board order imposing the remedy but, if the Board reserves the issue for later consideration, that opportunity will necessarily be deferred until the Board resolves the issue in a subsequent order. *See Cobb Mech. Contractors, Inc. v. NLRB*, 295 F.3d 1370, 1377 n.4 (D.C. Cir. 2002); *Manhattan Eye Ear & Throat Hosp. v. NLRB*, 942 F.2d

151, 156 (2d Cir. 1991) (where Board "left open the precise remedy to be imposed in the ordered backpay proceeding," court's enforcement of order did not constitute "law of the case" as to that issue).

Scepter seeks to avoid foreclosure under § 10(e) on the additional ground it is not "attempting to modify the Board's original Order" but rather "trying to clarify what the Board and this Court intended in the original 'make whole' remedy." Relying upon *NLRB v. Katz's Delicatessen of Houston Street, Inc.*, 80 F.3d 755, 771 (2d Cir. 1996), Scepter argues the court "surely would have found ... premature" any challenge to the remedy provided in the 2000 Order if the Company had raised such a challenge in its petition for review of that order.

The Board denies there is any ambiguity in the 2000 Order, which it maintains clearly "imposed two distinct affirmative requirements on the Company": (1) to "make employees whole for any expenses" they incurred, and (2) to "rescind" the wage increase "[i]f [so] requested by the Union." The Board argues, therefore, the 2000 Order put Scepter fully "on notice" of the alleged windfall it now protests.

We agree with the Board that the 2000 Order was clear and that it follows Scepter should have challenged the remedy in its petition for review of that order. Scepter could hardly have failed to notice the Board both (1) expressly added to the remedy proposed by the ALJ a provision requiring Scepter to "[m]ake employees whole for any expenses ensuing from the Respondent's unilateral changes in medical insurance coverage and contributions ... with interest," 331 N.L.R.B. at 1510, and (2) adopted the ALJ's proposal that the wage increase be rescinded only "on request by the Union." *Id.* at

1511. The Board thus left no ambiguity about remedies in the 2000 Order. Nor, therefore, did it err in the 2004 Order, as Scepter claims, by relying upon cases in which, as here, the Board held it did not have jurisdiction to "clarif[y]" a court-enforced order that was not ambiguous. *See, e.g.*, *Grinnell Fire Prot. Sys. Co.*, 337 N.L.R.B. 141, 141 (2001).

On the contrary, it is Scepter's reliance upon *Katz's Delicatessen* that is misplaced. In the present case, the Board imposed a remedy that, if objectionable at all, was objectionable on its face. In *Katz's Delicatessen*, on the other hand, the Second Circuit concluded the employer's challenge to an order was premature because the Board had "yet to determine how Katz's [retroactive payments to union welfare and pension funds] should be structured" so as to be remedial for the employees and not a windfall for the union -- a matter upon which, under *Manhattan Eye*, 942 F.2d at 159-60, the validity of the remedy depended. *See Katz's Delicatessen*, 80 F.3d at 771.

Scepter argues nonetheless that "[b]ecause the employers in *Grondorf*, *Manhattan Eye*, and *Katz's Delicatessen* were allowed to demonstrate the alternative benefits provided to employees and obtain offsets, [it] could not have anticipated that the Board would not similarly calculate the appropriate offset in calculating its remedy to prevent a double recovery windfall." As we have seen, however, those decisions are inapposite; in each case the employer raised its objection at the first opportunity. Scepter, in contrast, failed to object until the 2000 Order had been enforced by this court and the Board was powerless to amend it.

As the Board points out, the 2000 Order is akin to the order enforced by the Seventh Circuit in *NLRB v. Keystone*

*Steel & Wire, Division of Keystone Consolidated Industries, Inc.*, 653 F.2d 304, 306 (7th Cir. 1981), requiring the employer both to restore the benefits employees would have received under an unlawfully-revoked medical insurance plan and to continue offering the benefits they newly received under the plan the employer had unilaterally substituted. The court "endorse[d] the Board's policy" of "order[ing] a return to the status quo ante with regard to the unfavorable changes, but ... not penaliz[ing] employees by ordering revocation of the favorable changes." *Id.* at 308. In this case the Board applied the same policy when, in the 2000 Order, it allowed Scepter's employees to keep the wage increase the Company had unilaterally instituted without losing the benefit of the non-contributory insurance plan the Company had unilaterally terminated. Scepter had fair warning, both from the face of the 2000 Order and from Board precedent, of the "heads they win, tails you lose" nature of the remedy the Board was imposing upon it.

### III. Conclusion

Because Scepter did not in its petition for review of the 2000 Order challenge the remedy clearly imposed in that order, it could not do so at the compliance stage of the proceeding. The Board therefore correctly held in the 2004 Order that it lacked jurisdiction to grant Scepter's post-enforcement request for relief from the 2000 Order. Indeed, § 10 of the NLRA requires a party to file a timely exception to an order of the Board precisely in order to "insure[] against repetitive appeals to the courts," *Local 900, Int'l Union of Elec., Radio and Mach. Workers, AFL-CIO v. NLRB*, 727 F.2d 1184, 1191 (D.C. Cir. 1984), such as this one.

For the foregoing reasons, we deny Scepter's petition for

review and grant the Board's cross-application for enforcement.

*So ordered.*