# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued February 17, 2009        Decided April 3, 2009

No. 07-1479

SHEET METAL WORKERS INTERNATIONAL ASSOCIATION,
LOCAL 270, AFL-CIO,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

OIL CAPITOL SHEET METAL, INC.,
INTERVENOR

———

No. 08-1009

CARPENTERS' DISTRICT COUNCIL OF KANSAS CITY AND
VICINITY, LOCALS 311 AND 978, AFFILIATED WITH THE UNITED
BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA,
PETITIONERS

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

EPI CONSTRUCTION COMPANY,
INTERVENOR

———

Consolidated with 08-1039, 08-1081

———

On Petitions for Review and Cross-Application for
Enforcement of Orders of the
National Labor Relations Board

———

*Michael T. Anderson* argued the Standing and the Merits of the Board's Oil Capitol Rule for petitioner Sheet Metal Workers International Association. With him on the briefs were *Arlus J. Stephens* and *Loren Gibson*.

*Michael J. Stapp* argued the Standing and the Merits of the Board's Oil Capitol Rule for petitioners Carpenters' District Council of Kansas City and Vicinity, Locals 311 and 978. With him on the briefs was *Charles R. Schwartz.*

*Jason Walta*, Attorney, National Labor Relations Board, argued the Standing and the Merits of the Board's Oil Capitol Rule for respondent. With him on the brief were *Ronald E. Meisburg*, General Counsel, *John H. Ferguson*, Deputy General Counsel, *Linda Dreeben*, Deputy Associate General Counsel, and *Meredith L. Jason*, Supervisory Attorney.

*Maurice Baskin* argued the Standing and the Merits of the Board's Oil Capitol Rule for intervenor Oil Capitol Sheet Metal, Inc. and amicus curiae Associated Builders and Contractors, Inc. in support of respondent. With him on the brief was *Robert A. Hirsch*.

*Donald W. Jones* argued the Merits of the Unfair Labor Practices and filed the briefs for petitioner EPI Construction Company.

*Steven Goldstein*, Attorney, National Labor Relations Board, argued the Merits of the Unfair Labor Practices for respondent. With him on the brief were *Ronald E. Meisburg*, General Counsel, *John H. Ferguson*, Deputy General Counsel, *Linda Dreeben*, Deputy Associate General Counsel, and *Robert J. Englehart*, Supervisory Attorney.

*Michael J. Stapp* argued the Merits of the Unfair Labor Practices for intervenors Carpenters' District Council of Kansas City and Vicinity Locals 311 and 978.

*Donald W. Jones* was on the brief for intervenor EPI Construction Company in support of respondent.

Before: ROGERS, *Circuit Judge*, and WILLIAMS and RANDOLPH, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*: "Salts" are union members, and sometimes union employees, who apply for a job with an unorganized employer, seeking either to organize the employer's workforce or to precipitate conditions favorable to a future organizational campaign. See *Oil Capitol Sheet Metal, Inc.*, 349 NLRB 1348, 1348 n.5 (2007) ("*Oil Capitol*"); *NLRB v. Town & Country Elec., Inc.*, 516 U.S. 85, 87, 96 (1995). This case is about the National Labor Relations Board's new evidentiary rule for determining backpay and instatement liability in cases of unfair labor practices committed against salts. In *Oil Capitol*, the Board concluded that "the traditional presumption that the backpay period should run from the date of discrimination until the [employer] extends a valid offer of reinstatement" did not make sense in the salting context, given the limited duration of salts' employment objectives with the targeted employer

(as opposed to those of regular job applicants, who typically seek indefinite employment). *Oil Capitol*, 349 NLRB at 1349. Instead, the Board announced a new rule that would require its General Counsel, "as part of his existing burden of proving a reasonable gross backpay amount due, to present affirmative evidence that the salt/discriminatee, if hired, would have worked for the employer for the backpay period claimed in the General Counsel's compliance specification." *Id*. In a later case now also before us, the Board similarly ordered that the rule should govern determination of the remedy. *Exceptional Professional, Inc.*, 350 NLRB 985, 985 n.5 (2007) ("*EPI*").

The unions involved in the *Oil Capitol* and *EPI* orders are challenging the *Oil Capitol* rule as discriminatory against salts. Exceptional Professional, Inc., the responding employer in the *EPI* case, also filed a petition, challenging several adverse findings of unfair labor practices. The Board in turn cross-applied to enforce these findings against Exceptional Professional.

We do not get to the merits of the union petitioners' challenge to the *Oil Capitol* rule; at this stage, with the compliance proceedings still ahead, the challenge is unripe. We therefore dismiss the petitions insofar as they attack the *Oil Capitol* rule. As for the claims brought by Exceptional Professional on the merits of the *EPI* order, we deny these (and thus grant the Board's cross-application to enforce the order) in an unpublished judgment issued simultaneously with this opinion.

* * *

First, a few words on the evidentiary standards governing backpay calculations and the instatement remedy in unfair

labor practice cases. The Board's general course of action is to "order[] the conventional remedy of reinstatement with backpay, leaving until the compliance proceedings more specific calculations." *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 902 (1984). The point of the compliance proceedings is to tailor the remedy to the facts of the violation. *Id.*

In all compliance proceedings, the burden of proving the amount of backpay due lies with the Board's General Counsel. *Oil Capitol*, 349 NLRB at 1351. Before the *Oil Capitol* decision, however, the Board applied a rebuttable presumption that a discriminatee, salt or not, is entitled to backpay from the date of unlawful refusal to hire to the date of eventual instatement. See *Tualatin Elec., Inc. v. NLRB*, 253 F.3d 714, 718 (D.C. Cir. 2001). Because every discriminatee was presumed likely to have remained with the wrongdoing employer indefinitely but for the employer's unlawful conduct, the Board also presumed a right of instatement. See *Dean General Contractors*, 285 NLRB 573, 575 (1987). The burden of overcoming these presumptions rested with the responding employer. Of course the employer "retain[ed] the correlative right to seek out and to present evidence that a salt would not have" continued working for the employer, "whether by reason of the union's policies or of its own." *Tualatin*, 253 F.3d at 718. Contrary to the union petitioners' insistence, Sheet Metal Br. 18, there was no such thing as a right to "immediate and unconditional" instatement under the old rule; such a rule would have entailed automatic Board orders requiring that the salt be offered a job *before* the completion of compliance proceedings. Instead, instatement and backpay issues are left to be resolved "by a factual inquiry" in the compliance process. *Dean*, 285 NLRB at 575.

The *Oil Capitol* rule eliminates the rebuttable presumption in cases involving union salts. Instead, the rule places with the General Counsel the additional "burden of

going forward with the evidence in regard to the length of the backpay period" and "the burden of going forward with the evidence that the discriminatee would still be employed by the [responding employer] if he had not been the victim of discrimination." *Oil Capitol*, 349 NLRB at 1354.

> Such evidence may include, but is not limited to, the salt/discriminatee's personal circumstances, contemporaneous union policies and practices with respect to salting campaigns, specific plans for the targeted employer, instructions or agreements between the salt/discriminatee and union concerning the anticipated duration of the assignment, and historical data regarding the duration of employment of the salt/discriminatee and other salts in similar salting campaigns.

*Id*. at 1349. And because instatement and backpay are closely intertwined (truncation of the latter cuts off the former), the right to instatement under the new rule "is subject to defeasance . . . if, at the compliance stage, the General Counsel fails to carry this burden of persuasion." *Id*. at 1354.

* * *

The union petitioners are challenging the *Oil Capitol* rule before seeing how it actually plays out in the compliance proceedings. This poses a jurisdictional issue—whether the challenge is ripe.

Ripeness depends on "[1] the fitness of the issues for judicial decision and [2] the hardship to the parties of withholding court consideration." *Fed. Express Corp. v. Mineta*, 373 F.3d 112, 118 (D.C. Cir. 2004) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)). "In applying the ripeness doctrine to agency action we balance the interests

of the court and the agency in delaying review against the petitioner's interest in prompt consideration of allegedly unlawful agency action." *Id*. (internal quotations omitted).

In *Federal Express*—a case dealing with the recovery of losses that commercial airlines incurred as a result of post-9/11 grounding orders—we held that petitioners' challenge to rebuttable accounting presumptions was not fit for review before the agency made the calculations. First, we said, the case dealt with *rebuttable* presumptions, leading to "uncertain[ty] whether they will ever have the effect of depriving any of the Carriers of any compensation." *Id*. at 119 (declining "to anticipate a wrong when none may ever arise" (internal quotation omitted)). And second, we reasoned that "if and when [an actual wrong] does come to pass, judicial review of the issue 'is likely to stand on a much surer footing in the context of a specific application of this regulation than could be the case in the framework of the generalized challenge made here.'" *Id*. (quoting *Toilet Goods Ass'n, Inc. v. Gardner*, 387 U.S. 158, 164 (1967)).

These reasons apply with equal force in our case. First, the compliance proceedings have not yet taken place, and so at this point we do not know what effect, if any, the new evidentiary rule will have on backpay and instatement remedies. All that the *Oil Capitol* rule did was to remove a rebuttable presumption, forcing the Board's General Counsel to present affirmative evidence that a discriminatee would have remained with the employer up to the time of the compliance decision. In *Federal Express*, challengers attacked a rebuttable presumption; here they attack its removal. The implication is the same—we do not know whether the new rule will have any impact on the ultimate remedy.

Second, if and when the compliance proceedings do result in an actual injury, the union petitioners' challenge will come to us in a concrete factual context, shedding light on how the new rule operates in practice. The unions' claims here make details of the rule's operation particularly vital. They say the new rule will force them to turn over to the General Counsel documents revealing their organizing strategies, which they argue are the "equivalent of trade secrets." Sheet Metal Br. 13. These documents, the argument goes, will then end up in the hands of "the very employer who has already violated the Act to suppress organizing." *Id.*

As the Board responds, however, we do not yet know whether sensitive documents will be at issue, or whether the risk of their exposure will be any greater than under the prior rule. The General Counsel may choose to rely solely on the discriminatees' personal circumstances, obviating the need to put union organizing strategies into evidence during the compliance stage. NLRB Sheet Metal Br. 25. Alternatively, if the unions believe the General Counsel's subpoenas intrude unduly into internal matters, they may resist, thus putting the Board to a choice between petitioning for enforcement in the district court, or proceeding without the information. See 29 C.F.R. § 102.31(b), (d). Even assuming the union's organizing plans will be introduced into evidence, and further assuming they are in fact the equivalent of trade secrets—a point the NLRB does not concede—the Board may be able to shield the information from being disclosed to the employer. "The Board is well equipped to ensure that a party's sensitive information is protected, whether through the use of protective orders, *in camera* review, filing exhibits under seal, or otherwise." NLRB Sheet Metal Br. 27. The union petitioners are contesting the existence and efficacy of these measures, but the basic point remains true—we do not yet have enough information to know. Further, as we said in *Tualatin*, the employer was entitled under the old rule "to seek out and to

present evidence," 253 F.3d at 718, so it is quite unclear whether there will be any increased scrutiny of union plans. Delaying judicial review can eliminate guesswork in this area.

Lastly, we do not perceive any hardship to the union petitioners from withholding our review at this point. The petitioners fear losing the opportunity to challenge the *Oil Capitol* rule if they wait until the compliance proceedings, but they need not fear. While failure to object to a remedial rule enunciated in a Board merits decision may forfeit an attack when the remedial rule is objectionable on its face, see *Scepter, Inc. v. NLRB*, 448 F.3d 388, 391–92 (D.C. Cir. 2006) (contrasting *NLRB v. Katz's Delicatessen of Houston Street, Inc.*, 80 F.3d 755, 771 (2d Cir. 1996)), the remedial rule here is not objectionable on its face (for the reasons just developed), and in any event the unions have (obviously) raised their objections. See also *Tualatin*, 253 F.3d at 717–18 (allowing employer, after compliance proceeding, to challenge the *Dean* presumption that preceded the *Oil Capitol* rule). For now, therefore, the issue is unripe. And the same goes for the Carpenters' argument against applying the *Oil Capitol* rule to events transpiring before its announcement.

\* \* \*

The unions' petitions for review are therefore

*Dismissed*.